[No. 1740.   Decided November 21, 1895.]

F. H. CHANDLER, *Plaintiff*, COLUMBIA NATIONAL BANK OF TACOMA, *Appellant*, v. CUSHING-YOUNG SHINGLE COMPANY, *Defendant*, FRANK B. COLE, *Respondent*.

APPEAL — ERRORS NOT OF RECORD — ASSIGNMENT OF ERRORS — APPEAL-
ABLE ORDER — RECEIVERS — ACCOUNTING AND COMPENSATION — LIA-
BILITY FOR LOSSES — SALES BY RECEIVER TO HIMSELF— RATIFICATION
BY CREDITORS.

Where it does not appear from the record that no copy of the statement of facts proposed by appellant was served upon respondent after filing in the superior court, that ground of objection to the statement cannot be urged.

Where the only matter before the court for consideration is that of the accounting of a receiver in the cause in which he had been appointed, an order confirming his final report and directing a distribution of the funds in his hands, is appealable.

An appeal will not be dismissed for want of a specific assignment of errors in appellant's brief, when the brief, in the course of the argument on the "points" made therein, refers to the objections in the record which were passed upon by the court in making the order appealed from.

The fact that a receiver is not designated as such by appellant in the proceedings upon appeal from an order confirming his account and directing distribution, is no ground for dismissal, when the record plainly shows that he is proceeded against as receiver.

A receiver of a shingle company cannot be required to account for profits made by another corporation in a foreign market upon shingles sold by him to such corporation, although himself a stockholder therein, when, as receiver, he had not sufficient funds to enable him to ship his shingles to another market, but sold them for cash to his own corporation at the highest market price in the locality.

Where the court by which a receiver was appointed has fixed his compensation, after the hearing of testimony, and the allowance

made is warranted by the testimony adduced, and appears to be reasonable, the exercise of the court's discretion will not be interfered with by the appellate court.

A receiver appointed to operate a mill pending an action is not chargeable with the loss resulting from such operation, unless it was due to some act which he was not authorized to perform.

A sale by the receiver to himself of the trust property is not *per se* void, but voidable merely at the election of the *cestui que trust*, and where the beneficiary claims the proceeds he must be held as ratifying the sale.

Appeal from Superior Court, Pierce County — Hon. JOHN C. STALLCUP, Judge.    Reversed.

*R. B. Lehman, B. F. Heuston*, and *T. W. Hammond*, for appellant.

*Shank & Murray*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—This was an action on a promissory note executed and delivered to the plaintiff by the Cushing-Young Shingle Company, defendant. The complaint after setting out a cause of action in favor of the plaintiff upon the note in suit, further alleges that the plaintiff believes, and therefore alleges, that the defendant as a corporation is wholly insolvent; that said corporation is unable to pay its maturing obligations in the ordinary course of business, and that it is necessary for plaintiff's protection, and for the protection of all creditors of said defendant, that the property and assets be at once ascertained and preserved and that it be applied to meet and pay the just debts and obligations of the defendant, including plaintiff's claim; that to subserve this purpose and to prevent further embarrassment and litigation and the jeopardizing of the interests of the creditors of said concern, a receiver should be forthwith appointed for the de-

fendant, the Cushing-Young' Shingle Company, and that unless said receiver be at once appointed there is danger of the assets and property of the defendant being lost, wasted or so embarrassed as to be placed beyond the reach of plaintiff, and plaintiff and the other creditors may lose their claims against said defendant; that plaintiff is informed and believes and alleges that the indebtedness of said firm is $15,000; that the plaintiff and other creditors of said Cushing-Young Shingle Company are wholly without any security other than the general merchandise and other assets of the said defendant, which assets consist of shingles and shingle bolts in various localities, and also bills receivable, notes, bonds, mortgages and the plant of said firm defendant, aggregating about $15,000. The complaint prays judgment against defendant for the amount due upon the promissory note, with interest thereon, and for costs and disbursements in this action; and also that a receiver be appointed by the court to take charge and possession of all property and assets, real and personal, of the said defendant, and that said receiver be authorized to conduct and continue said business and to sell and dispose of said assets and convert the same into money to pay the claim of this plaintiff and all other creditors, as the court may direct.

The defendant admitted the allegations of the complaint, and the court, on October 25, 1893, in accordance with the prayer of the complaint, and with the consent of the defendant, appointed one Frank B. Cole as receiver of the property of the defendant, and authorized him to take immediate possession of all the property and assets of the defendant wherever found, both real and personal, and to take all necessary steps to collect obligations due said defendant and to con-

vert the property into money. The receiver was authorized, until further order of the court, "to continue the business, if deemed necessary, as now conducted," and was ordered, before entering upon his duties as such receiver, to execute and file in the cause a good and sufficient bond with at least two sureties, in the sum of $10,000, and to take and file the oath required by law.

. The defendant, prior to the commencement of this action, was engaged in manufacturing and selling shingles, and the receiver continued to operate the mill and conduct the business of the defendant for a period of nearly one year. Soon after his appointment and qualification, the receiver filed an inventory of the assets and liabilities of the defendant corporation, and in January, 1894, he reported to the court, showing his receipts and disbursements up to that time. On June 11, 1894, the Columbia National Bank of Tacoma filed a petition in this cause, asking that the receiver be required to make a full and complete report, including a specific statement of all moneys received and disbursed by him in the operation of said mill, and the conduct of said business, and showing fully the condition of the mill and business, and whether operated at a profit or loss; and in case it should appear that the business was not conducted at a profit, that the mill and assets be converted into money and the money properly invested during the pendency of the action. The court on that day directed the receiver to report as prayed for in the petition.

A report was accordingly filed by the receiver on or about August 14, 1894, to which the petitioner objected on the ground that it did not show a complete itemized account of expenditures and receipts, and

was so indefinite as not to show whether the business had been managed for the best interests of all concerned, or whether the items of expenditure stated therein were just or not. Another report was filed in December, 1894. On January 11, 1895, the court, at the instance of the petitioner, authorized an examination touching the accounts of the receiver in open court, and such examination was had, commencing January 18, 1895. This examination disclosed the fact that the receiver had sold a large portion of the shingles manufactured under his direction to the Cascade Trading Company, a corporation in which he was a stockholder, and of which he was the business manager. After hearing the testimony, and on January 25, 1895, the court confirmed and approved the reports of the receiver, basing its order upon the following findings of fact:

(1) That for the shingles sold to the Cascade Trading Company the receiver obtained the highest price for shingles in this market; that it was impossible for him in his trustee capacity or individual capacity to place these shingles into any other market, and having charged the Cascade Trading Company with, and received for his trust, the highest price obtainable for the shingles sold by him, and that price in cash, without loss, the trust was benefited by the transaction and the receiver has fully and legally accounted for the shingles sold to the Cascade Trading Company.

(2) The court further finds from the evidence that the reports in all other respects are just and correct.

It appears from the briefs of counsel that this order was set aside and re-entered on January 31, 1895.

These findings were duly excepted to by the petitioner, and thereafter the receiver filed his final report, to which objections were also interposed and

overruled and exception taken. The court thereupon, on February 13, 1895, confirmed the report, and ordered a distribution of the funds remaining in the hands of the receiver. From these orders of the court the petitioner prosecutes this appeal.

The respondent moves to strike the statement of facts from the record and files of this cause, upon the grounds, (1) that no copy of the statement of facts proposed by appellant has ever been served upon the respondent after the same was filed in the superior court, and because the said pretended statement was settled and certified by the trial court, and at the instance of appellant, though no copy thereof had been served upon the respondent; (2) that the certificate attached to the pretended statement of facts does not comply with the requirements of the statute, and hence can be of no effect.

As to the first ground of this motion, it is sufficient to say that it does not appear from the record that the proposed statement of facts was not filed in the cause before it was served on the respondent. Nor is the second ground available, for the reason that it appears that the certificate of the trial judge is in strict conformity to the provisions of the statute.

The motion to strike is denied.

The respondent also moves to dismiss the appeal herein and to affirm the judgment on the grounds, (1) that the order from which this appeal is prosecuted is not a final order within the meaning of the statute; (2) that in so far as said appeal pertains to the orders entered January 25th and January 31st, it should be dismissed, for the reason that the appeal from the order of February 13, 1895, does not bring up to this court for review any order previously entered in the cause; (3) that appellant's brief fails to

point out any alleged error or mistake committed by the superior court, nor is there any assignment of error made on behalf of appellant; (4) that this appeal is taken and prosecuted against the respondent, not a party to the action in the court below, nor for or against whom any order, ruling or judgment was made or entered in the superior court.

We think the order appealed from is a final order in the nature of a final judgment. The only matter before the court for consideration was that of the accounting of the receiver, and the order made and entered finally disposed of that question, and was, therefore, an appealable order.

The appeal in this case is taken from the orders of January 25th and January 31st, as well as that of February 13, 1895, and therefore the question as to whether the latter order brings up the former ones previously entered need not be discussed. We may here remark, however, that the alleged order of January 31st does not appear to be included in the record, and therefore cannot be here considered.

The third ground of respondent's motion presents a more serious question. The assignment of error in the brief of appellant consists of a statement of the following "points:" (1) The receiver should account for the profits derived from his dealings with the trust estate; (2) he should account more clearly for moneys received by him as receiver; (3) no compensation should be allowed to the receiver for his services in view of his violation of the trust; (4) if any compensation is allowed it should be greatly reduced; (5) he should be required to make good to the creditors the loss resulting from his operation of defendant's mill; and (6) the items of disbursement objected to should be disallowed.

The statute provides that the brief of appellant shall clearly point out each error that the appellant relies on for a reversal (Laws 1893, p. 127), and the respondent insists that this provision has not been complied with in this instance. In *Haugh v. Tacoma,* 12 Wash. 386 (41 Pac. 173), the appeal was dismissed because no errors had been assigned. In that case, however, the brief of appellant not only did not specify the errors relied on for a reversal, but failed even to refer to the pages of the record where the matters complained of could be found. But in this case the brief, in the course of the argument on the different points here made, refers to the objections in the record to the receiver's reports, and for that, and the further reason, that the objections now urged were passed upon by the court in making the orders appealed from, we have concluded not to dismiss the appeal on the ground now under consideration, although it must be conceded that the errors are not as clearly pointed out as they might have been.

In this connection it may not be improper to observe that, in our opinion, it was the purpose of the legislature in enacting the law concerning the assignment of errors, to require the appellant to so specifically set forth each and every alleged error that an inspection of the brief alone will fully disclose the same. It was not the intention to require this court to search through the entire record in a case in order to determine what errors may have been committed, and if a proposed assignment is such as to require it to do so, it will be entirely disregarded. In other words, the assignment itself must, as the legislature has virtually declared, clearly point out each error intended to be alleged, and this means, as was said by the supreme court of Tennessee, something more than

a mere invitation to the court and adverse counsel to examine the entire record upon general and indefinite negations of the correctness of the decree or judgment. *Denton v. Woods*, 86 Tenn. 37 (5 S. W. 489).

The fact that respondent Cole is not designated by the appellant in this proceeding as receiver is no ground for dismissing the appeal. While it would have been in conformity to law and correct practice to so designate him, still the record plainly shows that he is proceeded against as receiver, and, therefore, the omission to characterize him as such in the title of the proceeding cannot possibly injure or prejudice the respondent. And that being true, the respondent's objection is without any substantial foundation.

The motion to dismiss is likewise denied.

As to requiring the receiver to account for profits received by him from his dealings with the property or funds of the estate in his hands, it is perhaps sufficient to say that we are not satisfied that any profits were received by him. The shingles bought by the Cascade Trading Company were shipped by it to eastern markets to be disposed of at its own risk and expense; and, at the time of the hearing in the court below, it had not been determined whether the venture resulted in a gain or loss. It is true, there was some testimony tending to show that the usual profit realized by shippers had been about fifteen cents per thousand on ordinary grades of shingles and something more than that sum on those of a superior quality. But the court below, as we have seen, found as a fact that the trust estate was benefited by the sales to the Cascade Trading Company, and inasmuch as the shingles were actually sold for cash at the highest market price at the place of sale, it would seem that the court arrived at a correct conclusion.

It is suggested, however, by appellant that the receiver ought to have received, as receiver, as much for the shingles as he received for them as manager of the trading company. But we think the evidence fairly shows that, as receiver, he was, for the most part, unable to ship to eastern markets by reason of not having sufficient funds belonging to the trust estate to enable him to do so. In order to make sales in distant places it was necessary to advance freights and provide for storage and for delays in payment, which the receiver testified he could not do with the means at his command. Under these circumstances it would not be equitable to require the receiver to personally account for whatever profits the Cascade Trading Company realized, even if such profits were clearly shown. The facts in this case do not bring it within the well settled and salutary rule that a trustee will not be permitted to so deal with property which he holds in trust as to make a profit for himself at the expense of the beneficiary. The receiver had the absolute right to sell these shingles. In fact, it was his duty to sell them; and having received their full value from the only available purchaser, the beneficiaries have no equitable right to claim any further or different amount. Besides, the evidence discloses that before the receiver was appointed the Cascade Trading Company purchased at least one-third of all the shingles manufactured by the defendant corporation, and having been authorized to conduct the business as it was formerly conducted, the receiver was, impliedly at least, authorized to continue to make sales to that company. The receiver's books are not before us, and one of his reports to the court is not included in the record, viz., that of August 14, 1894. We are, therefore, unable to determine from the

record that the receiver did not account fully for all the moneys received by him; and the accounting having been satisfactory to the trial court, its judgment, upon that point, will not be disturbed.

It was not contended in the court below that the receiver was entitled to no compensation by reason of his having violated his trust, nor was it even claimed that the compensation allowed by the court was excessive, except as to one item thereof, and, therefore, that question will not now be considered. The rate of compensation of receivers is not fixed by law in this state, and the amount must therefore be determined by the court in the exercise of a sound discretion, and must depend upon the circumstances of the particular case. The general rule is that where the court by which the receiver was appointed has fixed his compensation, after the hearing of testimony, and the allowance made is warranted by the testimony adduced, and appears to be reasonable, the exercise of the court's discretion will not be interfered with by the appellate tribunal. High, Receivers (3d ed.), § 783.

The compensation allowed in this instance was something over $100 per month during the time the receiver was employed, and considering the amount of labor performed and the responsibilities assumed, the allowance, although ample, does not appear to be unreasonable or unjust.

The appellant insists that the receiver should be required to make good to the creditors the losses resulting from the operation of the defendant's mill. The testimony, however, fails to convince us that any loss was thereby incurred. The receiver's books, it appears, were examined by an expert, who seemed to think the mill was operated at a loss, but he frankly stated that he had not had time to make a careful ex-

amination of the books and that he arrived at his conclusion, not by a thorough examination of the various accounts, but by simply taking, without verification, the footings found in the ledger and cash book. Such testimony is too uncertain to constitute a foundation for the claim made by appellant. But even if a loss were satisfactorily shown, the receiver should not be charged with it unless it resulted from some act of his which he was not authorized to perform. In operating the mill he was not only doing what the plaintiff in this action prayed for in his complaint, but was also following the directions of the court. He is, therefore, not liable personally for loss, if any resulted. Gluck & Becker, Receivers of Corporations, pp. 347, 348.

As to the items of disbursement which were objected to by appellant and allowed by the court, we think several of them should have been disapproved as not properly chargeable to the receivership. It appears that the receiver paid a regular salary to a stenographer during part, if not all, of the time he was conducting the business of his trust. This, we think, was an unnecessary expenditure, in view of the extent and character of the business transacted, and should not have been allowed as a legitimate disbursement.

And the same thing may be said with regard to the item, apparently amounting to $120, or more, for the use of two telephones. One of them was placed in the office of the Cascade Trading Company, manifestly for the mere convenience of the receiver, and the other at the mill. The rent paid for the latter was perhaps a proper item of expense, but the amount paid for the use of the former,—that is, one-half of the whole sum paid, should not have been credited to the receiver's account.

On the examination it appeared from the receiver's accounts with the Cascade Trading Company, that that company was indebted to the receiver in the sum of $17.31, on account of shingles sold to it. In his final report the receiver sets out the accounts collected by him subsequently to the examination, but fails to mention, or in any manner account for, the balance due from the Cascade Trading Company, unless the same is, in some way not apparent on the face of the report, included in the item charged as " paid overweights, shortage, rebates, allowed Cascade Trading Company in full settlement of all cars shipped and including an error of Nov. 1, '94, of $34.34 . . . $113.96." This latter charge should be more fully explained. The matter of overweights is made sufficiently clear by the testimony, but we are at a loss to understand why the receiver should sell a given quantity of shingles at Tacoma and allow the purchaser, after he has shipped them to another and distant state, a credit for shortage apparently discovered at the point of destination, at the expense of the trust estate. This shortage may have occurred *en route*, either by theft or carelessness, and, if so, the buyer and shipper, and not the seller, should certainly bear the loss. We do not wish to be understood, however, as saying that this charge for shortage and rebate should not be allowed in any event, but only that it should first be clearly shown to be a proper or necessary expenditure, which we do not think has yet been done. If it was the result of a mistake as to the quantity of shingles actually sold by the receiver, the Cascade Trading Company should be credited with any amount charged to, but not actually received by it.

We do not deem it necessary or desirable to enter

into an extended discussion of the question of the powers and duties of receivers. Many cases are cited by appellant to show that the sales made by the receiver to the Cascade Trading Company were void for the reason that the receiver could not at the same time be both seller and purchaser. But we do not think that a sale, by a trustee, of trust property to himself is *per se* void; it is simply voidable at the election of the *cestui que trust*. The latter may ratify the sale, if he so desires, and claim the proceeds, and if, as was done in this case, the beneficiary claims the proceeds he thereby ratifies the sale and must be content with the proceeds thereof. In other words, he cannot both ratify and annul the sale at one and the same time.

For the reasons above indicated, the orders appealed from will be reversed and the proceeding remanded to the court below with directions to require the respondent to account for the balance reported to be due from the Cascade Trading Company, and to reject the several items in his account hereinabove specified.

HOYT, C. J., and SCOTT and GORDON, JJ., concur.

DUNBAR, J., dissents.