[No. 4325.    Decided April 4, 1904.]

FLORENCE JOHNSTON *et al., Respondents,* v. EDSON GERRY, *Appellant.*[1]

APPEAL—STATEMENT OF FACTS—PROOF OF FILING. Where the statement of facts is bound separately from the transcript, the endorsement on the former of the date of filing over the signature of the clerk of the lower court ought to be sufficient proof that it was so filed, since by Laws 1901, p. 28, § 2, the statement is a part of the record.

SAME—SUPPLEMENTAL RECORD TO SHOW FILING AND NOTICE OF SETTLEMENT. A motion, made in the brief before the transcript is filed, to strike the statement of facts for failure to duly show that it was filed in time or that notice of settlement was served, should be denied where the next day a supplemental transcript is prepared and sent up showing due filing, notice and proof of due service; and such motion does not preclude additions to the record since there was at the time nothing in the appellate court upon which it could operate, and Laws 1901, p. 28, authorizes such additions.

SAME—SERVICE OF NOTICE OF SETTLEMENT—PROOF BY THE CERTIFICATE. A recitation in the trial judge's certificate of an appearance and consent at the time of certifying a statement of facts is persuasive argument against granting a motion to

[1] Reported in 76 Pac. 258, 77 Pac. 503.

strike the statement for failure of the record to show notice of settlement and proof of service.

APPEAL—BRIEFS—ASSIGNMENT OF ERRORS. While errors not pointed out with reasonable clearness will not be considered, a brief will not be struck out for failure to assign the errors where alleged errors are set forth with the pages of the record showing the various rulings, and rule eight is substantially complied with.

EJECTMENT — PARTIES — NONRESIDENTS NOT CONSENTING TO AC-TION. In an action of ejectment commenced by part of the heirs interested in recovering the land, the other heirs, who are nonresidents and whose consent to bringing the action could not be procured, are proper but not necessary parties defendant in order that they might, if they saw fit, have their rights determined.

PROCESS — PUBLICATION OF SUMMONS WITHIN NINETY DAYS. Where part of the defendants are not residents, and personal service of the summons and complaint is made upon a resident defendant, it is not essential that the service upon the nonresidents by publication be commenced within ninety days from the filing of the complaint, if there is no unreasonable delay.

ACTIONS—DILIGENCE IN PROSECUTION OF ACTION—PROCESS—DE-LAY IN SERVICE. A delay of four months in commencing service by publication, after a personal service upon a resident defendant, is not unreasonable or ground for dismissal for lack of diligence in the prosecution of the action, where the delay was caused in part by a second publication made necessary by an error in the first and insisted upon by the defendant personally served and moving the dismissal.

SAME — SECURITY FOR COSTS — DELAY. An action will not be dismissed for delay on the part of one of the nonresident plaintiffs in filing security for costs, where the security was in fact given, since there was no prejudice thereby.

EJECTMENT—LEGAL TITLE—WHEN NOT ESSENTIAL. Under Bal. Code, § 5500, changing the common law rule, ejectment may be maintained against a party in possession holding the legal title, where the plaintiffs have an equitable title or interest in, and right to the possession of, the property.

EJECTMENT — ACTIONS — DISMISSAL — CONSPIRACY —VOLUNTARY DISMISSAL AS TO PART OF THE WRONGDOERS—WHEN NOT AN ES-TOPPEL. In an action to recover possession of premises obtained through a fraudulent conspiracy, the voluntary dismissal as to part of the conspirators does not operate as an es-

toppel against the further prosecution of the action against the defendant in possession, since the same will be regarded as an election not to sue the parties dismissed rather than a release of the right of action, as the defendants could have been sued separately, and the gist of the action is the wrong done in procuring title, the averment of conspiracy being immaterial.

PLEADINGS—MOTION TO MAKE DEFINITE—ERROR CURED BY TESTIMONY. The overruling of a motion to make more definite and certain becomes unimportant in view of testimony subsequently introduced covering the points in question.

INFANCY — DISAFFIRMANCE OF DEED — DELAY OF THREE YEARS. Where a minor does nothing for more than three years after attaining his majority to disaffirm a deed executed by him when he was nineteen, he fails to disaffirm the contract within a reasonable time, as required by Bal. Code, § 4581, and can not claim that the deed is invalid because not ratified by him.

PRINCIPAL AND AGENT—AGENT'S SECURITY FOR ADVANCES—EJECTMENT — FRAUD OF AGENT IN TAKING TITLE — FINDINGS — SUFFICIENCY OF EVIDENCE—JUDGMENT ON PROOFS ORDERED BY SUPREME COURT. Where the heirs of a homestead applicant employ one G to procure title through the instrumentality of an act of Congress, after a rejection of the claim by the secretary of the interior, under an agreement to pay him reasonable compensation and his disbursements, and G spent considerable time, and the jury find that he expended $1,350 in that behalf without success, and some years later G and others procured title by means of a suit against the state brought by one M, who conveyed to G, and it appears that G secured deeds from two of the heirs covering a two-fifths interest, entered into possession and mortgaged the lands, in an action of ejectment brought by four-fifths of the heirs, the gist of which is the fraud of G in procuring title in himself after entering upon the aforesaid employment, in which action G testifies that he is willing to surrender three-fifths upon payment of three-fifths of his disbursements while employed, a finding and judgment that G was the owner of but a one-fifth interest, and allowing him no lien for his disbursements is not justified by the proofs or in accordance with justice, and the supreme court will order judgment to the effect that G is the owner of two-fifths subject to the mortgage, and that he have a lien upon the other three-fifths for three-fifths of his disbursements; since an agent purchasing property for his principal has a right to

hold it as security for money advanced with the principal's consent.

SAME. In such case, the entire property would be subject to the mortgage, G's two-fifths interest to be first exhausted.

SAME—INTEREST. Where the appellant is entitled to interest only from the time the amount due is determined, the supreme court upon reversing the lower court and determining the amount due, should allow interest thereon only from the date of the final judgment in the supreme court, and not from the date of the judgment appealed from.

SAME—APPEAL—COSTS. Held not inequitable under the circumstances of the case, to allow no costs on appeal to either party.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered February 3, 1903, upon the verdict of a jury rendered in favor of the plaintiffs, in an action to quiet title and recover possession of real property. Reversed.

*Elmon Scott,* for appellant.

*Fairchild & Bruce,* for respondents.

ANDERS, J.—This action was instituted by the heirs at law of David Dealy and Martha Dealy, both deceased, to recover possession of the N. ½ of the N. W. ¼, and lots 3 and 4, of sec. 16, Tp. 38 north, of range 2 east, (W. M.), situate in Whatcom county, Washington.

The respondents move the court to strike from the files the statement of facts herein, for the reasons, (1) that it does not appear that said statement was filed in the office of the clerk of the superior court within thirty days after the rendition of the judgment appealed from, or within any further time given by the court, or by stipulation of the parties, or at any time, or at all; (2) that it does not appear from the record that any notice was ever given to the respondents of the filing of said state-

ment of facts; and (3) that Ida J. Moore, one of the parties who appeared in the cause, was never served with any notice of the filing or settlement of the statement of facts.

As to this motion, it may be observed generally, that the learned counsel for the respondents do not really claim that the said statement was not, in fact, filed with the clerk of the superior court within the time provided by law, or that, as a matter of fact, no notice of such filing was served on respondents. It is frankly conceded, that the "purported" statement of facts shows that it was filed in the office of the clerk; that it has a waiver of notice by some of the parties, a stipulation that it contains all the facts, and the affidavit of appellant's counsel that it was served, with notice of its filing, on one of the respondents' counsel. But it is insisted that the notice of the filing of the statement of facts, and the proof of the service of such notice, cannot be considered by this court, because they were not embodied in the transcript of the record and files, as prepared and certified by the clerk.

It is the duty of the clerk of the superior court, under the statute, to prepare, certify, and file in his office, within ninety days after an appeal has been taken, a transcript containing a copy of so much of the record and files as the appellant shall deem material to the review of the matters embraced within the appeal, said transcript to be so prepared, certified, and filed in the office of the clerk, at or before the time when the appellant shall serve and file his opening brief. The statute also provides that, within four months after an appeal has been taken, the clerk shall, at the expense of appellant (except in certain specified criminal cases), send up to the surpeme court such transcript, together with the original briefs on appeal filed in his office, and that the papers and copies so sent up, to-

gether with any thereafter sent up, as provided therein, shall constitute the record on appeal. But it is evident that the legislature did not intend that the "papers and copies" sent up by the clerk, at the instance of the appellant, should, in all cases, be considered as constituting the *whole* record on appeal; for they further declared that "any bill of exceptions or statement of facts on file when the record is so sent up shall be sent up *as a part thereof,* unless the superior court, or a judge thereof, has not yet passed on an application for the settling and certifying of such bill or statement." Laws 1901, p. 28, § 2, amending § 6513, Bal. Code.

It is, therefore, plain that a statement of facts or bill of exceptions, certified by the trial court, or a judge thereof, in accordance with the requirements of the statute, after proper notice to the necessary parties, constitutes a part of the record in the appellate court. Indeed, the sole purpose and effect of such certification is to make the bill of exceptions or statement of facts a part of the record. Bal. Code, § 5060. In this case, it appears that the clerk of the superior court caused the statement of facts to be bound in a separate volume from the transcript, and that some papers were attached to the former that properly should have been included in the latter, among which were the notices, and proof of service of the same, which the respondents claim can only be shown by the transcript as certified by the clerk. The statement of facts is indorsed as filed by the clerk on March 1, 1902; and, inasmuch as the signature of the clerk is not disputed, it would seem that such indorsement ought to be considered sufficient proof that it was so filed. But, be that as it may, it appears from a supplemental certificate of the clerk, attached to the transcript and dated May 27, 1902,

that the filing of the statement of facts was noted by him on March 1, 1902, in the regular appearance docket kept by him in his office. Judgment was entered in this action on February 3, 1902, and the statement, according to the indorsement upon it and the certificate of the clerk above mentioned, was filed on the 1st day of March following, and therefore within the time limited by law.

It also appears from the supplemental transcript, certified and sent up by the clerk with the original transcript, at the request of appellant, that proper proof was made of the service of a copy of the proposed statement of facts on respondents' counsel, and of the admission of service of notice of the filing and settling of the same by the defendant, Ida J. Moore. The respondents' brief appears to have been filed in the office of the clerk of the superior court on May 26, 1902, and the respondents incorporated therein the motion, now under consideration, to strike the statement of facts. On the following day, May 27, the supplemental transcript hereinbefore mentioned was prepared and certified by the clerk.

It is urged, however, by counsel for the respondent, that this court cannot properly consider any additions to, or corrections of, the record which were made after the filing and service of their motion. But we are of the opinion that this contention is not tenable. The motion to strike the statement of facts is, of course, addressed to this court, and, at the time it was made in respondents' brief, both the statement and transcript were still in the superior court. It follows, therefore, that there was then nothing here upon which the motion could operate. And, conceding (though not deciding) that, on filing the record and briefs with the clerk of this court, the motion became operative, by relation, as of the time it was filed in the

superior court, still it does not necessarily follow that it must be granted. Before the time had expired within which the clerk was required by law to transmit the record to this court, the appellant caused the transcript, as originally made and certified by the clerk, to be supplemented, as we have already intimated, so as to show the filing of the statement of facts and the service thereof on the respondents, as well as the proof of due service of the notices above mentioned. This he had the right to do, and thus make the record speak the truth, notwithstanding the motion interposed by the respondents. Indeed, the same thing might have been done, under the statute, even after the record was transmitted to this court. The language of the statute relating to this subject is, in part, as follows:

"In case any bill of exceptions or statement of facts shall be filed or certified, or any other addition to the records or files shall be made after the record on appeal shall have been sent up, a supplementary record on appeal, embracing so much thereof as the appellant deems material, or a copy thereof, may be prepared, certified and sent up at any time prior to the hearing of the appeal." Laws 1901, *supra*.

It appears from the certificate of the trial judge, attached to the statement of facts, that, at the time of the signing and certifying of the statement, the plaintiffs and respondents appeared by their attorneys, and consented to the certifying and signing of the same; and that fact itself constitutes a persuasive argument against the granting of the motion in question. The motion to strike the statement of facts is denied.

The respondents also move this court to strike the brief of appellant, and affirm the judgment herein, "because the said brief does not assign any errors upon which any ruling of the trial court might be called in review, or brought in

question before this court." It is provided in § 6514. Bal.
Code, and also, in effect, in rule 8 of this court, that the
appellant's brief shall clearly point out each error relied on
for a reversal; and it is alleged by counsel for the respond-
ent that the appellant herein has failed to comply with the
law in that regard, and they cite *Haugh v. Tacoma,* 12
Wash. 386, 41 Pac. 173, 43 Pac. 37, and *Perkins v.
Mitchell,* 15 Wash. 470, 46 Pac. 1039, in support of their
position. In those cases the briefs were stricken for the
reason that they did not point out any error whatever relied
on for a reversal, or allege that any error was committed by
the trial court, or that any of the matters discussed in the
briefs were ever presented to such court for determination.
But in this case a different state of facts is presented. Al-
leged errors of the trial court are set forth in appellant's
brief, and the pages of the record showing the various rul-
ings of the court, and the objections thereto, are designated
therein. Errors not pointed out with reasonable clearness
will not be considered by this court, but where the law has
been substantially complied with, a motion to strike the
brief will not be granted. *Chandler v. Cushing-Young
Shingle Co.,* 13 Wash. 89, 42 Pac. 548. The motion to
strike appellant's brief is also denied.

It appears that the land in controversy in this action was
settled upon by one David Dealy (together with his wife
and certain of his children) in the year 1884, for the pur-
pose of acquiring title thereto under the homestead laws of
the United States. Thereafter he offered to file his home-
stead application for the land in the proper land office.
His application was rejected for the reason that the land
therein described had been reserved and set apart for the
benefit of common schools. On appeal, this decision of the
officers of the local land office was sustained, both by the

commissioner of the general land office and the secretary
of the interior. No appeal was taken to the courts, and
the finding in effect that the land belonged to the state was
considered conclusive as to its ownership. The state, how-
ever, by its proper officers, disclaimed all interest in the
land, and selected and obtained other land in lieu of it. It
thus appeared that neither the general government nor the
state claimed it, and no individual had obtained title.

Such being the peculiar status of the land, a bill was
introduced in Congress permitting the said David Dealy
to file his homestead application in the district land office
at Seattle. This bill, it seems, never became a law. But
it appears that in 1894 Congress did pass an act for the
relief of the heirs of Martha A. Dealy, widow of said
David Dealy, who died in the year 1892. For some reason,
not clearly disclosed, nothing was done by the heirs of
Martha A. Dealy to acquire title to the land under the act
of Congress. Subsequently an act was passed by the state
legislature for the relief of such heirs, which was vetoed
by the governor. Thereafter no legislative relief was
sought or obtained by any of the heirs of David or Martha
A. Dealy.

After the efforts of the Dealy heirs to obtain title to the
land in question had thus failed, one John Munro insti-
tuted in the superior court of Thurston county an action
against the state of Washington, in which it was adjudged
and decreed that the state held the legal title to the land
hereinbefore described, from the United States government,
and that said state held such title in trust for the plaintiff,
John Munro, and that the state, by its proper officer (desig-
nated by the court), make and execute a deed of conveyance
of the above described land to the plaintiff, John Munro,
within ninety days, provided the defendant did not appeal

from said judgment to the supreme court. This judgment was entered on September 15, 1899. No appeal was taken therefrom, and a deed was thereafter executed to Munro in accordance with the terms of the decree. Subsequently Munro conveyed portions of the land so deeded to him to various persons, who are designated as defendants in the complaint herein, and another portion thereof to the defendant and appellant, Edson Gerry. Before the commencement of this action, the land conveyed by Munro to Gerry was, by the latter, mortgaged to Ida J. Moore, one of the defendants, to secure the payment of an indebtedness to her.

The complaint herein seems to have been filed in the superior court on July 2, 1900. It alleges, that the plaintiffs are the surviving heirs at law of David Dealy, deceased, and Martha Dealy, his third wife, deceased; that the defendant Thomas Dealy is the only surviving heir at law of the said David Dealy, deceased, and his first wife, deceased; that the defendants William Dealy, Beckie Johnson, and Susie Davis, are the surviving heirs at law of said David Dealy, deceased, and ————— Dealy, his second wife, deceased; that the defendants York are the surviving heirs at law of James York and Mary York, deceased, the latter having been a daughter of said David Dealy, deceased, and his second wife, deceased; that, in the spring of the year 1884, the said David Dealy and Martha Dealy, his wife, together with their family, made a settlement upon, and began to improve the N. ½ of the N. W. ¼ and lots 3 and 4 of sec. 16, Tp. 38 North, R. 38 East, in Whatcom county, Washington; that, at the time of making their said settlement upon said land, the same was subject to settlement and entry, and the said David Dealy and Martha Dealy and their family made improvements upon said

lands of great value (stating it), and continued to reside
thereon until on or about May 8, 1892, when the said David
Dealy died; that said Martha Dealy, widow of said David
Dealy, deceased, continued to reside with her family upon
said land until July 15, 1893, when she died; that, im-
mediately after the death of said David Dealy, said Martha
Dealy was appointed administratrix of his estate, and con-
tinued to act as such administratrix until the time of her
death; that on or about November 6, 1893, one John
Broyles was appointed administrator of the estate of David
Dealy, deceased; that he, as such administrator, took pos-
session of the lands above described, and the improvements
thereon, and continued in the actual, open, and peaceable
possession thereof until February 26, 1900, at which time
he was discharged by the court, and the administration of
the estate closed; that during the year 1889 the said David
Dealy employed the defendant Edson Gerry to act as his
agent and attorney, and to take such steps as to him should
seem best to procure title to said lands for the said David
Dealy and Martha Dealy; that, while the defendant Edson
Gerry was acting as such agent, the said David Dealy died,
and the said Edson Gerry continued to act for said Martha
Dealy, for herself and as administratrix of the estate of
David Dealy, deceased; that after the death of said Martha
Dealy, the said defendant Gerry continued to act as agent
and attorney for the plaintiffs and for said estate, and that
on August 2, 1893, the plaintiffs and their brother, David
Dealy, now deceased, executed and delivered to the defend-
ant, Edson Gerry, a power of attorney, wherein and where-
by they constituted and appointed him their attorney in
fact for the purpose of securing for them title to said lands,
and the said Gerry then and there undertook to act as such
attorney in fact for the purpose aforesaid, which said power

of attorney is of record in Whatcom county and has never been recalled or revoked by any of the parties, and the same is now in full force and effect; that, while the said Edson Gerry was acting as such agent and attorney, he received money from said David Dealy during his lifetime, and after his death from said Martha Dealy, and after her decease from the plaintiffs and from the estate of David Dealy and Martha Dealy, deceased; that the defendant Gerry, while professing to act as the agent of the plaintiffs, entered into a conspiracy with the defendant John Munro, whereby he caused title to said land to be procured in the name of said John Munro for the purpose of defrauding the plaintiffs, and, during the time he was procuring the said title, he was representing to the plaintiffs that he was still acting as their agent and endeavoring to secure for them the title to said lands; that, immediately upon procuring title to said land, the defendant John Munro, in furtherance of said conspiracy, executed a deed to the said defendant Gerry, conveying to him a large portion of said lands, and conveyed to defendants Hurlbut, Nicholson, Hayne, and Ida J. Moore, other portions of said lands, and that said defendants claim to be in possession of said property, and to own the same; that the said defendants Hurlbut, Nicholson, Hayne, and Moore had full knowledge of the claim, interest, and rights of the plaintiffs, and of the fraud to be practiced upon them by said John Munro and Edson Gerry, at the time of the execution of the conveyances so made to them as aforesaid, and that the said conveyances were so executed to, and received by, said parties with the intent to defraud the plaintiffs; that the plaintiffs and the defendants Thomas Dealy, William Dealy, Beckie Johnson, James York, William York, Edward York, and Susie Davis are the only

heirs at law of the said David Dealy, deceased; that, after the discharge of John Broyles as administrator of said estate, the said defendants took possession of said property and have ever since retained possession thereof. The complaint further alleges, that plaintiffs had made a demand on the defendants for the possession of the property, and that the said defendants now hold the same adversely to the rights of the plaintiffs; that the defendants Thomas Dealy, William Dealy, Beckie Johnson, Susie Davis, James York, William York, and Edward York are nonresidents of the state of Washington, and their consent to the bringing of this action could not be procured, and for that reason they are made parties defendant; that, since the entry into the possession of said property, as aforesaid, the rents, issues, and profits thereof have been of the reasonable worth and value of $200, and said sum has been paid to the defendants, or some of them, as rent for the said property. The prayer of the complaint is, (1) for judgment against all the defendants, except the Dealy heirs, for the possession of said property; (2) for costs and disbursements; (3) for a writ of restitution; and (4) for the sum of $200, the rents and profits of said land.

Before the contesting defendants filed their answer, the plaintiffs, by leave of court, voluntarily dismissed the action as to Munro and his above mentioned grantees, save and except defendant Edson Gerry, and as to all the lands described in the complaint except that portion thereof conveyed by Munro to said Gerry. The complaint, as above set forth, was not amended, either before or after the entry of the order of dismissal above mentioned. The defendant Gerry was personally served with the summons on July 3, 1900, the day following the filing of the complaint. The defendants alleged to be heirs of David Dealy, de-

ceased, were served by publication, but such publication was not commenced until November 3, 1900. At this stage of the case the defendants Gerry and Moore, conceiving and insisting that the plaintiffs' cause of action, if any they had, was purely equitable, and could not be enforced in an action at law, moved to strike the complaint, on the grounds, (1) that it failed to state facts sufficient to entitle the plaintiffs to proceed at law; (2) that it purports to state a cause of action at law; and (3) that ejectment will not lie against the holders of the legal title. This motion was denied by the court and the ruling excepted to.

The said defendants then moved that the complaint be made more definite and certain, so as to set up, among other things, (1) the terms of contract or contracts whereby said Edson Gerry agreed to act as agent and attorney, the time or times when the same were made, whether written or oral, what recompense he was to receive, and whether the plaintiffs have paid the same; (2) what moneys have been paid or tendered by plaintiffs to said Gerry, and at what time; and (3) whether or not the said lands were administered upon, distributed, or disposed of, and to whom, in the administration proceedings pleaded. This motion was also denied, and exception noted by the court.

A motion to require a nonresident plaintiff to give security for costs was granted. Several motions to dismiss for want of prosecution were made and denied. After these motions had been denied, the defendants Gerry and Moore demurred to the complaint on the grounds, that there was a defect of parties plaintiff and defendant; that it did not state facts sufficient to constitute an action at law; and, generally, that it did not state facts sufficient to constitute a cause of action. This demurrer was overruled and an exception noted.

Thereafter the defendant Gerry, answering, denied that the plaintiffs and certain defendants named as heirs in the complaint are the only heirs at law of Daivd Dealy, deceased, and alleged that David Dealy, Jr., now deceased, was one of such heirs, having as great a right as any of the others; denied any knowledge or information sufficient to form a belief as to whether certain defendants named in the complaint are the heirs at law of David Dealy, deceased, and his first and second wives, or as to whether the defendants York are the surviving heirs at law of Mary York, deceased; denied that he entered into a conspiracy with John Munro, or with any one, to defraud the plaintiffs, or that he procured or took title to the lands in the name of John Munro to defraud the plaintiffs, or that he acted as agent for said David Dealy or Martha Dealy, or said administrator, after the year 1893; denied that he received any moneys from them thereafter, and alleged that the only money he ever received from David Dealy and Martha Dealy, or either of them, was $320 given to him for special disbursements, which he disbursed accordingly; denied that he ever received from the plaintiffs any money, except $5 paid in July, 1893, and alleged that he thereafter, from time to time, demanded money from them to meet expenses, which greatly exceeded the sums so received, to prosecute said business in accordance with their agreement, and that they refused to pay the same. The answer contains other denials which it is not necessary to set forth specifically at this time.

The defendant Gerry admits, in his answer, that in the year 1888 he entered into a contract with said David Dealy, whereby he was to act as his agent and endeavor to procure title to the said premises, and whereby the said David Dealy was to pay all his expenses incurred therein, repay him all

his disbursements, and pay him a reasonable compensation
for his services; but alleges that the said David Dealy
failed and refused to comply with the terms of said con-
tract on his part, and repudiated the same, and abandoned
all his claims thereunder.    The defendant also admitted
that he acted as agent for said Martha Dealy and certain
of the heirs, and had a power of attorney from the plaintiffs
Florence Johnston, Elsie Beidler, and Belle Castle, and
from David Dealy, Jr.; but alleges that, in the latter part
of the year 1893, and at all times thereafter, the plaintiffs,
and each of them, repudiated and refused to be bound by
their agreement, in any way, or at all, and relinquished
all rights thereunder, and refused to furnish the necessary
moneys for the expenses and disbursements incident to
such agency, and for the payment of the defendant.

The defendant further pleaded in his answer several
affirmative defenses, among which were, an estoppel by
reason of the release of John Munro and others, designated
in the complaint as defendants, and open, notorious, ad-
verse possession of the premises in question, by the defend-
ant and his grantor, for a period of more than ten years
prior to the commencement of this action.   He also set up
a counter claim for the money expended by him in the
matter of his agency, and for his compensation in that
behalf.   He also alleged, that on December 30, 1899, he
executed certain notes to the defendant Moore, and secured
the same by a mortgage on the premises conveyed to him
by the said John Munro; that the said defendant Moore
had no knowledge or notice from him, or otherwise to his
knowledge, of the existence of any claim or claims or
right by, or upon the part of, the plaintiffs, or other heirs-
defendant, or any of them, in or to the premises described
in the complaint, or any part thereof; and that the said

mortgage is a valid and subsisting lien on said lands, paramount to any and all claims of the plaintiffs, and of the defendants, other than the said Moore. And, as a partial defense to the action, the defendant Gerry averred that, on May 2, 1895, George Dealy, one of the plaintiffs, and David Dealy, Jr., one of the heirs of David Dealy, for a valuable consideration, conveyed by deed whatever rights they, and each of them, had in and to the said lands, whereby, if the plaintiffs have any rights therein, this defendant became the owner of an undivided two-fifths of said lands, and that said deeds are of record in the auditor's office of Whatcom county, in volume 40 of Deeds, pages 121-123. The prayer of the answer is, that the action be dismissed; that the said mortgage be adjudged a first and valid lien upon said premises, as against all of the plaintiffs and defendants, in the event that the plaintiffs, or any of them, be held to have any rights in and to said premises; that the expenses and disbursements of this defendant, together with a reasonable compensation for his services, with interest on each, be adjudged a first lien thereon, and that the plaintiffs and the heirs defendant be compelled to pay the same, as a condition precedent to their obtaining any relief herein. The new matter contained in the answer was controverted by the reply, and, upon the issues so formed, the cause was tried to a jury.

However, before the case came on for trial, a default judgment was entered in favor of the defendants Gerry and Moore, and against the defendants who were served by publication (except Beckie Johnson, who was permitted to come in as a party plaintiff), wherein and whereby it was adjudged and decreed that said defendants Thomas Dealy, William Dealy, James York, William York, Edward York, and Susie Davis, and all persons claiming, or

to claim, under them or either of them, take nothing in this action, as against the said defendants Edson Gerry and Ida J. Moore, and that they are forever estopped from asserting, as against them, their successors, or assigns, any interest in or to the premises described in the pleadings in this action, and every part thereof. A default was also entered in favor of the plaintiffs, and against these same defendants. No appeal was taken from the above mentioned interlocutory judgment in favor of the defendants Gerry and Moore.

Upon the trial the jury, under the direction of the court, made special findings, some of which do not seem to be entirely consistent with others, and one, at least, of which does not appear to be supported by any evidence disclosed by the record. With their special findings, the jury returned a general verdict, by which they found that the plaintiffs were the owners, and entitled to the possession, of an undivided four-fifths of the property therein described (the same being the premises described in the deed of Munro to defendant Gerry), and that the defendant Edson Gerry was the owner, and entitled to the possession, of an undivided one-fifth interest in and to said property, and that the mortgage of the defendant Ida J. Moore was a valid and subsisting mortgage upon an undivided one-fifth interest in and to the said premises. The defendant Gerry thereupon moved the court, (1) for judgment in his favor dismissing the action, on the grounds that it appears from the complaint and pleadings of plaintiffs, the evidence, and the findings of the jury, that the rights and claims of the plaintiffs, if any they had, were founded upon an alleged conspiracy between defendants Gerry and Munro to defraud the plaintiffs, and, with full knowledge thereof, the plaintiffs, after the commencement of this action, released

and discharged the said Munro from all liability therein, and caused this action to be dismissed as to him, and thereby lost the right to seek any relief in this action, or to further prosecute the same; (2) that the plaintiffs be not permitted, in any event, to recover more than the aggregate of their individual interests, or one-tenth each, as shown by the pleadings and proofs in the cause; (3) that the mortgage to Ida J. Moore be adjudged to be a lien upon all the lands described in the verdict herein, if said verdict is allowed to stand for any purpose; and (4) that the plaintiffs be required to repay to the defendant Gerry the amount of his expenditures in and about procuring the title to said lands, viz.: the sum of $1,350, as found by the verdict of the jury, before they are allowed to recover anything in this action, and that the same be declared to be a lien upon the whole of said lands. This motion was by the court denied.

The said defendant then moved for a new trial for the following reasons: Error in the assessment of the amount of recovery in favor of said defendant; insufficiency of the evidence to justify the verdict, and that said verdict is against the law; error in law occurring at the trial, and excepted to at the time. The court denied the motion for a new trial, and entered judgment in accordance with the verdict of the jury, declaring the plaintiffs (and Beckie Johnson) to be the owners and entitled to the possession of four-fifths of the property in controversy, and the defendant Edson Gerry to be the owner and entitled to the possession of one-fifth thereof. The court further adjudged that the mortgage of Ida J. Moore was a valid lien upon the lands, but ordered that such lien shall not be enforced against the interests of the plaintiffs therein until after the interest of Edson Gerry has been exhausted. The court also dis-

missed the action as to the said defendant Moore, at the cost of the plaintiff, and gave judgment against the defendant Gerry and in favor of plaintiffs for their costs and disbursements. From this judgment, the defendant Gerry has appealed to this court, and has specified various errors alleged to have been committed by the court below during the progress of the cause, on which he relies for a reversal.

It is first claimed that the trial court erred in denying appellant's motions to dismiss the action for want of prosecution, which were made at different stages of the case. And it is urged that these motions should have been granted for the reasons, (1) that the publication of the summons was not commenced within ninety days after the filing of the complaint; (2) that the nonresident plaintiff failed to give security for costs within a reasonable time after the court had ordered such security to be given; and (3) that the action was not prosecuted with reasonable diligence. Our statute relating to the manner of commencing actions provides that,

"Civil actions in the several superior courts of this state shall be commenced by the service of a summons, . . . or by filing a complaint with the county clerk, as clerk of the court: Provided, that unless service has been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint." Bal. Code, §4869.

As we have seen, the publication of the summons was not commenced within ninety days after the date of filing the complaint, and it is, therefore, insisted by counsel that, under the statute, appellant was entitled to a dismissal of the action; and *Deming Investment Co. v. Ely,* 21 Wash. 102, 57 Pac. 353, is cited in support of his position. In that case this court said:

"In other words, a valid service of summons by publication cannot be had unless commencement by publication thereof is begun within ninety days from the date of filing the complaint."

The plaintiffs in that case, it will be observed, were endeavoring to obtain service of the summons on all the defendants by publication, and the court correctly held that such service could not be had after the expiration of the ninety days' limitation fixed by the statute. Here, however, it is admitted that one, at least, of the defendants was served personally, and the question to be determined is whether the rule announced in the case above cited should be applied in the case at bar. It is earnestly contended by counsel for the appellant that the defendants not personally served were all necessary parties to the action, and, under the statute and the said decision of this court, could not be served by publication after the time designated by law. And counsel for the respondents seem to concede that necessary parties must be served personally, or that service by publication must be commenced within the statutory time, but they insist that the defendants not personally served were not necessary parties, and that they were made parties defendant in order that they might, if they saw fit, set up, and have determined, any apparent rights which they might claim in or to the property in question.

We have concluded, from a consideration of the entire complaint, including the prayer for relief, that the defendants in question were proper, though not necessary, parties. But, be that as it may, we are of the opinion that, in contemplation of the statute, the action was timely commenced by personal service of the summons on the appellant, and that the court did not err in refusing to dismiss it for a failure to commence service on the nonresident defendants by publication within ninety days from the time of filing

the complaint. But we do not wish to be understood as deciding that personal service on one or more of the defendants will indefinitely prolong the time for service by publication. Persons who begin actions in court are in duty bound to prosecute them with reasonable diligence; but, in view of the fact that a large part of the delay complained of was caused by a second publication of summons—the first having been defective—and that the appellant insisted on having all the defendants served, we are unable to say that the prosecution of the cause was unreasonably delayed.

As to the point that appellant was entitled to a dismissal for a delay on the part of one of the plaintiffs in giving security for costs, it is sufficient to say that it appears that such security was in fact given, and the appellant was, therefore, not prejudiced by reason of the delay.

It is next contended that the court erred in overruling appellant's demurrer to the complaint, and in support of this contention it is argued that there is a defect of parties defendant, that the complaint fails to state a cause of action at law, and that the rights of the respondents can only be enforced, if at all, in a proper proceeding in equity. We cannot assent to the proposition that there is a defect of parties; and we are not convinced that the complaint fails to state a cause of action under our statute. It is true that, at common law, the plaintiff, to support an action of ejectment, must be vested with the legal title to the lands in question. 10 Am. & Eng. Enc. Law (2d ed.), 482. But this rule has been changed by statute in several of the states, and does not obtain in this state. This action was evidently brought under § 5500, Bal. Code (Pierce's Code, § 1142), which provides that,

"Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper

county, to be brought against the tenant in possession; if there is no such tenant, then against the person claiming the title, or some interest therein, and may have judgment in such an action quieting or removing a cloud from plaintiff's title;    .   .   ."

It will be observed that the appellant was not only in possession of the lands in question, but was claiming title thereto at the time the complaint was filed, and it therefore follows that the action was properly brought against him, under the section of the code above cited.    But did the complaint show that the respondents had an interest in the premises sufficient to support the action?    We think it did. It appeared from the averments of the complaint, which must be deemed true for the purposes of the demurrer, that the respondents had an equitable title to, or interest in, the property, notwithstanding the fact that the legal title was held by appellant.    And we recently held, after a careful consideration of our statutes and the prior decisions of this court, that one having an equitable title to real property may maintain an action for possession thereof, under the above mentioned section of the statute.    See *Povah v. Lee*, 29 Wash. 108, 69 Pac. 639.    In that case the court, among other things, said:

"One holding an equitable title and being out of possession need not first bring an action to turn his equitable into a legal estate, and then bring a second action to obtain possession.    His rights may all be tried in one action, and we think it is the intent of this statute, as well as the general policy of the law, to require him to so try them."

See, also, *Brown v. Calloway, ante* p. 175, 75 Pac. 630.

It is further contended that the court erred in refusing to dismiss the action on the ground that the release, by respondents, of John Munro, who was alleged to have been a joint wrongdoer with appellant, discharged the latter, and estopped the respondents from further prosecuting the

action. It was held in *Turner v. Hitchcock,* 20 Iowa 310, cited by appellant, that, as a general rule, the release of one joint tort feasor discharges all. But it was also held in that case, which was an action to recover damages for a trespass, that, if several persons jointly commit a tort, the plaintiff in general may elect to sue all, or some of the parties jointly, or any one of them separately. We find no fault with the doctrine announced in that case, but we do not think it supports appellant's contention. It seems to us that the dismissal of the action as to Munro, and other parties originally named as defendants, was, in effect, · an election not to sue them, rather than a release of a right of action. It has frequently been held that a civil action for damages, sustained because of a conspiracy, may be brought and sustained against a single defendant. See, 6 Am. & Eng. Enc. Law (2d ed.), p. 872, and cases cited. And we see no reason why this rule should not apply to cases like the present, in which the gist of the action is not the alleged conspiracy, but the wrong done by appellant in procuring title to the lands in controversy in his own name, in disregard of his alleged agreement with the respondents. The averment of a conspiracy in the complaint was immaterial, and might have been omitted altogether without affecting the respondents' cause of action. *Hutchins v. Hutchins,* 7 Hill 104. We think the motion to make the complaint more definite and certain should have been granted, but by reason of the proofs subsequently introduced, that question has become practically unimportant.

We now come to the consideration of the merits of the case as disclosed by the record. An examination of the evidence has convinced us that the verdict and judgment as rendered are neither in accordance with justice, nor justified by the proofs introduced at the trial. It is mani-

fest that the interest of the respondents in these lands grows out of, and depends upon, their contract with the appellant. They inherited no interest therein from their father by reason of his settlement thereon, for it was determined by the proper officers of the government that he obtained no interest in, or right to, the premises on account of such settlement. Indeed, the decision of the land department of the government induced the making of the original contract between David Dealy and the appellant, as well as the subsequent agreements hereinbefore mentioned.

The respondents Johnston, Beidler, Castle, and their brother David M. Dealy, deceased, in the year 1893, entered into the contract with appellant now under consideration, whereby the appellant undertook to further endeavor to procure for them a title to the entire tract of land described in the complaint herein, and whereby they promised to pay the expenses occasioned by the prosecution of said business, together with a reasonable compensation for his services, and to repay the moneys advanced by him in furtherance of the enterprise. At the time these contracts were entered into, all parties believed that the land desired could only be obtained through the instrumentality of an act of Congress. With that object in view, the appellant went to the city of Washington, and there industriously labored, for a considerable length of time, to accomplish his purpose. While there he not only disbursed the small sums of money sent him, from time to time, by his principals, according to his agreement, but paid a large amount of expenses, attendant upon his employment, out of his own funds, a portion of which was money received from the government as a pension. Although he claimed to have expended a much larger sum, the jury found that he thus paid out $1,350. It is not pretended that that sum, or any

part of it, has ever been refunded by the respondents, and it would therefore seem clear that appellant should have had the benefit of such finding in some manner in the final judgment, which was denied him by the court.

During the course of the trial it was stipulated by the respective parties that, if the respondents and the appellant should each be found entitled to an interest in the property, then their recovery should be by fifths; or, in other words, if the respondents prevailed, they should recover three-fifths or four-fifths of the premises, and the appellant one-fifth or two-fifths, according to their respective rights as shown by the evidence. It was conceded at the trial by the respondents that appellant was entitled to one-fifth of this land as grantee of David M. Dealy. But appellant contended that he was also entitled to at least an additional fifth, which was conveyed to him by George Dealy, one of the respondents, at the time David M. Dealy's deed was executed.

This deed—as we have said—was executed on the 2d day of May, 1895. At that time George Dealy, the grantor, was between nineteen and twenty years of age. And at the trial he contended that his deed was invalid when made, and was still invalid, because he had not ratified it since he attained his majority. The learned trial court instructed the jury on that theory, and thereby, we think, committed error. Our statute provides, in effect, that a minor who wishes to *disaffirm* his contract must do so within a reasonable time after he becomes of age, and restore to the other party what he received from him by reason thereof. Bal. Code, § 4581. But in this instance the respondent George Dealy did not repudiate or disaffirm his deed, or attempt to do so, until at or about the time this action was commenced, which was more than three years after he attained

his majority. That was certainly not within a reasonable time, and he must now be deemed bound by his deed.

Upon the trial the appellant was sworn as a witness in his own behalf, and testified, in substance, that he was the owner of an undivided two-fifths of the land in question by purchase from the aforesaid David M. Dealy—designated in appellant's brief as David Dealy, Jr.—and the respondent George Dealy. He also testified, in effect, that he was, and at all times had been, willing to transfer to respondents their proportionate interest, on payment by them of the amount due for his services, and the money paid out by him in accordance with the terms of his agreement. But he further testified to the effect that he had agreed with the respondents, or some of them, that he would himself stand two-fifths of these expenditures, inasmuch as he owned two-fifths of the property, in case they should pay the remaining three-fifths thereof. Giving to the respondents the greatest benefit they can possibly claim by reason of this testimony, they are still indebted to appellant for expenses incurred by him in a sum equal to three-fifths of $1,350, the amount the jury found he had expended, viz., $810. And the respondents' interest in the land in litigation should have been made subject to a lien in favor of appellant to secure the payment of such indebtedness. It has been directly held that, where an agent purchases property for his principal, he has a right to hold it as a security for the money advanced by him with the principal's consent. See, *Rose v. Hayden*, 35 Kan. 106, 10 Pac. 554, 57 Am. Rep. 145, and cases cited.

We do not deem it necessary to send the cause back for a new trial, as it appears clear to our minds, from the record before us, that a proper and equitable judgment may be ordered by this court. Since this appeal was argued

and the cause submitted, the appellant has died, and the administrator of his estate has been substituted in his place by order of the court, and the judgment ordered will be entered accordingly.

The judgment of the court below is reversed, and the cause remanded with instructions to enter a judgment and decree adjudging the respondents to be the owners, and entitled to the possession, of an undivided three-fifths of the lands described in the judgment appealed from, said interest, however, to be subject to a charge of $810 as a lien thereon in favor of appellant, and providing that, if the same, together with legal interest thereon from the date of the decree, be not paid within one year from said date, then said interest may be sold as upon execution to satisfy said lien. The court will, by its decree, award the remaining two-fifths of said premises to the appellant, subject to the mortgage to Ida J. Moore. Neither party will recover costs.

FULLERTON, C. J., and DUNBAR and MOUNT, JJ., concur.

## ON PETITION FOR REHEARING.
[Decided July 12, 1904.]

PER CURIAM.—The appellant has filed a petition for a modification of the opinion of this court filed in this cause on April 4, 1904. It will be shown, by an examination of the said opinion, that the superior court adjudged the mortgage executed by appellant to Ida J. Moore to be a valid lien upon all the lands in controversy in this action. But it was further adjudged that the interest of appellant in the land should be primarily subject to the mortgage lien. After the lien of the mortgage had been established by the judgment of the court, the action was dismissed as to the mortgagee, at the instance of the respondents. The

finding of the court that the mortgage was a lien upon the entire land in dispute having been accepted and acquiesced in by the respective parties to the action, we deemed the controversy in that regard at an end, and therefore refrained from discussing the question at length on the appeal.

It was stated, in effect, in the opinion heretofore filed in this cause, that the appellant's two-fifths interest in the land was subject to the mortgage to Ida J. Moore. But it was not stated therein that the remaining three-fifths of the premises, awarded to the respondents, was also subject to the lien of that mortgage; and, for that reason, appellant asks to have the opinion so modified as to express more clearly the real meaning and intention of the court with respect to that matter. We did not suppose that it would be inferred, from anything that was said in the opinion, that it was the intention of the court to modify or reverse the ruling of the superior court fixing the status of the mortgage. As we have already intimated, we did not consider that question an issue in the case, as presented to this court. The superior court awarded only one-fifth of the land to appellant. But this court, after a careful consideration of the evidence, concluded that he was entitled to two-fifths thereof, subject, however, to the mortgage, and therefore directed the trial court to enter a judgment to that effect. And when we stated that appellant's said interest in the property was subject to the mortgage of Ida J. Moore, we supposed it would be understood, although not so stated, that the respondents' interest therein was also subject to the lien imposed upon it by the same instrument, and validated by the judgment of the court above mentioned. But, inasmuch as a doubt has arisen in the minds of counsel as to our decision in regard to that matter, we

will again say that it was not our intention to annul, modify, or change the ruling of the lower court as to the validity of this mortgage, but simply to show that the lien extended to, and was binding upon, the interests of all parties, as finally determined by this court.

The appellant also asks that interest on $810, which was found to be due him from the respondents, be allowed from the date of the judgment appealed from, instead of from the date of the final judgment, as specified in the opinion of the supreme court. But, inasmuch as we are still of the opinion that appellant is entitled to interest on his demand only from the time when the amount thereof was finally determined, we are not inclined to grant this request. We are also of the opinion that it was not inequitable, under the circumstances appearing in this case, to refuse to allow costs to either party, and appellant's request to recover the costs of the appeal is likewise denied.