[No. 27074.    *En Banc.*    October 20, 1938.]

JOHN H. ETHREDGE, *Respondent,* v. DIAMOND DRILL CONTRACTING COMPANY, *Appellant.*[1]

*Dillard & Powell,* for appellant.

*Brown & Weller,* for respondent.

BEALS, J.—Plaintiff, John H. Ethredge, being the owner of a tract of land in Chelan county, Washington, which he believed might contain deposits of oil or gas, entered into a contract, bearing date October 7, 1936, with defendant, Diamond Drill Contracting Company, a Washington corporation, whereby defendant

'Reported in 83 P. (2d) 364.

agreed to drill a test well on plaintiff's property, using the diamond drill method, the drilling to proceed at the plaintiff's option, so long as financed by him in accordance with the agreement. If plaintiff desired that casing be used, he should provide the same, to be installed at defendant's expense, plaintiff to pay for the work on a footage basis—$4.75 per foot for the first 250 feet, $4.00 for the second 250 feet, and varying amounts being specified on a footage basis up to 1100 feet, the rate thereafter increasing twenty-five cents per foot for each hundred feet of hole drilled. The following provision appears in the contract:

"If well is abandoned by the contractor without consent of the leaseholder, and or contractor refuses to drill new hole as hereinafter provided; all moneys theretofore received by contractor shall be repaid to leaseholder within ten days from date of abandonment, and if not so paid, suit may be brought therefor by leaseholder, in which event contractor agrees to pay a reasonable attorney's fee, to be fixed by the court, in addition to the taxable costs in said action."

The contract further provided that plaintiff should deposit in a joint account, to stand in the names of plaintiff and defendant, in a designated bank, sums of money, depending upon the footage drilled, payments to be made to defendant upon completion of each hundred feet of drilling. The contract contained other provisions, which need not be discussed.

Work was commenced under the contract and proceeded with varying degrees of success until about the middle of March, 1937, at which time, it appearing that plaintiff had not deposited in the bank sufficient funds to meet the requirements of the contract, defendant telegraphed plaintiff as follows:

"Financing provisions our contract broken  No funds for proceeding beyond present depths  Instructing Kier to pull casing and ship outfit."

Soon thereafter, plaintiff deposited sufficient funds in the joint bank account to meet the requirements of the contract and conferred with defendant, the conference resulting in the writing of a letter by defendant to plaintiff, which reads as follows:

"Mr. John H. Ethredge                    March 20, 1937.
"Fairmont Hotel
"Spokane, Washington
"Dear Sir:

"After careful consideration of the drilling reports and our past experience in the drilling of your test location at the Raymond Lease, Wenatchee, Washington, we are not in a position to guarantee the continuance of the hole to any specified depth. We will, however, agree to diligently prosecute the drilling and use every reasonable means to carry on the hole at its present size until for five consecutive days of drilling the average daily return from footage drilled, at the then going rate, shall be less than twice the amount of the labor expense for an eight hour shift.

"We will agree to proceed on the above basis for the following consideration.

"Drilling operations will be commenced at once at the rate of $4.75 per foot to 800 feet and when a depth of 775 feet is reached, the Joint Account shall be $980.80 to cover the current 100 feet of drilling at the above price, the drillers expense invoice and drilling from 800 to 900 feet at $5.00 per foot. At a depth of 800 feet, deposit shall be made to the Joint Account for the drilling from 900 to 1,000 feet, and with the drilling of each 100 feet of hole, deposit shall be made for an additional 100 feet of drilling at a price increase of 25c per foot, over and above the price of preceding 100 feet.

"For your convenience the scale of drilling prices will be as follows:

> 702 to 800 — $4.75 per foot
> 800 to 900 — $5.00 per foot
> 900 to 1,000 — $5.25 per foot
> and so on increasing 25c per foot
> for each additional 100 feet.

"In the event of completion of the terms of this agreement the casing in the hole may be purchased by you at the time of such completion for the following prices:

3″   Casing, now set at 148 feet   .40 per foot
2-½ Casing, now set at 565 feet   .50 per foot
2-¼ Casing, now set at 631 feet   .75 per foot

"The 3″ casing string may be purchased without either of the others. The 3″ and the 2-½″ may be purchased without the 3rd, but the purchase of the 2-¼″ string shall presuppose the purchase of the two larger sizes.

"You shall also have the right to shut down at any time to test the hole. During such test there will be a charge for Driller and Helper for all time consumed in the performance of such test.

"You shall also have the right to shut down for a period not exceeding 30 calendar days, and in the event of such shutdown pay the drill operators expense to Spokane and return to Wenatchee. Upon decision to resume operations, we will recommence as soon as reasonably possible.

"The above proposal read and accepted.

> "JOHN H. ETHREDGE
> "John H. Ethredge
> "DIAMOND DRILL CONTRACTING COMPANY
> "By:  A. T. Fleming, Secty."

The letter (hereinafter referred to as the second agreement) was signed by both plaintiff and defendant. This agreement was typed, and the words "of drilling" in the first paragraph thereof were added with a pen.

At this time, the hole had been drilled to a depth of 702 feet, and defendant immediately resumed drilling operations. By April 22nd, the drilling had progressed 133 feet further, to a total depth of 835 feet. From the last mentioned date to June 25th, although the drilling crew was continuously employed, at an expense of about $12 a shift, no substantial progress in drilling was accomplished. This was due to the nature of the

ground, which, at the depth above mentioned, consisted of loose soil, principally sand and gravel. Under date June 25, 1937, defendant wrote plaintiff a letter, the pertinent portions of which read as follows:

"John H. Ethredge
"Wenatchee, Washington.
"Dear Sir:

"On March 20th, we executed an agreement for the procedure of drilling at the Raymond Lease, at which time the depth of the hole was 702 feet. Since that time we have been working the hole continuously, at a considerable expense to ourselves and have been unable to make forward progress in the hole since April 22nd.

"Therefore, under the provisions of our agreement, we consider it necessary to suspend our operations and are instructing Mr. Nicholas today to prepare the equipment for return to Spokane. . . .

"We very much regret that the character of the formation is not such that we can continue the operation.        Yours very truly,

"DIAMOND DRILL CONTRACTING CO.
"A. T. Fleming, Secretary."

July 14, 1937, plaintiff instituted this action against defendant, seeking recovery of the amount which plaintiff had paid from the initiation of the work under the original contract, in the sum of $3,533.85, together with attorney's fees. The action was tried to the court sitting without a jury, and resulted in the entry of findings of fact and conclusions of law in plaintiff's favor, followed by a judgment for the amount demanded in plaintiff's complaint, together with an attorney's fee in the sum of $350, from which judgment defendant has appealed.

Error is assigned upon the entry of the findings of fact and conclusions of law made by the court; upon the refusal to make certain findings proposed by appellant; and upon the entry of judgment in respondent's favor.

This case presents few disputed questions of fact. It appears from the record that, after appellant had drilled the hole to a depth of 835 feet, it, in good faith, attempted for almost two months to increase the depth of the hole, but was unable to accomplish this result because of the nature of the ground, it being impossible to keep the drill working at the bottom of the hole and thereby advance its depth. The trial court held that the words "five consecutive days of drilling," as contained in the second agreement above quoted, meant actual turning of the drill at the bottom of the hole. Appellant contends that the words last quoted mean no more than that appellant should diligently prosecute drilling operations, and that it was justified in ceasing work when unable to make progress at the rate provided in the contract.

If this question be determined against appellant's contention, then appellant contends that it should be held that the parties substituted the second agreement for the original contract; and that, as the second agreement contains no provision liquidating damages or providing for attorney's fees, the court erred in basing the amount of recovery upon the provisions of the original contract.

We shall first consider appellant's argument that, by the agreement of March 20th, the parties made a complete new contract, which, from that time on, controlled the relationship between the parties. Respondent contends that the agreement last referred to was merely supplementary to the original agreement; and that, in determining the rights of the parties upon the questions to be here decided, both contracts must be considered and construed together. In this connection, appellant relies upon several authorities, among them the opinion of this court in the case of *Sherman v. Sweeny*, 29 Wash. 321, 69 Pac. 1117. In that case,

this court discussed at length the question of whether a second agreement between the parties was merely a provision within the first contract, or an independent and substituted agreement. In the course of its opinion, the court said:

"The legal effect of a subsequent contract covering the same subject matter and made by the same parties as an earlier agreement, but containing terms inconsistent therewith, so that the two cannot stand together, is to rescind the earlier contract. It becomes a substitute therefor, and is the only agreement between the parties upon the subject."

The original contract between the parties to this action covered several matters not embraced within the letter of March 20th, and it cannot be held that this second agreement cannot stand with the first. By the original contract, appellant agreed to drill a test well to a maximum depth of three thousand feet. By the first paragraph of the second agreement, this provision of the earlier contract was modified in appellant's favor, appellant, however, agreeing to prosecute the work until the specified condition which should excuse it from further drilling should be met. The second agreement contains no reference to any maximum depth to which the well should be drilled, but by releasing appellant from any guaranty to continue the hole to any specified depth, it manifestly refers to the first contract. This is also true in connection with the reference to "the joint account," contained in the second agreement, that letter containing nothing concerning the joint account, save a mere reference thereto. To ascertain what the joint account was, the first contract must be examined.

We are clearly of the opinion that the second agreement was merely supplementary to the first, and that the two must be read together as one contract. The

terms of the second agreement to some extent modified the original contract, but did not abrogate it completely, the second agreement by itself forming no complete contract.

As we view the case, the principal question to be determined arises out of the agreement of March 20th, and its answer depends upon the construction to be placed upon the wording of that contract, with particular reference to the words "five consecutive days of drilling," as therein contained, the respective contentions of the parties as to the construction to be placed upon these words being as above stated. Drilling an oil well is, of course, a complicated proposition. The drilling operations are one thing, and comprise much more than the actual extension of the bore downwards. By the second agreement, appellant undertook "to diligently prosecute the drilling," which includes the entire operation, and to continue work

" . . . until for five consecutive days of drilling the average return from footage drilled, at the then going rate, shall be less than twice the amount of the labor expense for an eight hour shift."

As a matter of fact, appellant continued the drilling operation for practically two months, without any substantial progress in extending the hole. As prepared by appellant, the second agreement omitted the words "of drilling." These words were added at the suggestion of respondent's counsel, and were agreed to by appellant. Of course, the projection of the bore downward was the object of the contract, and, at the same time, measured the success of the operation and the return to appellant.

During the course of the trial, the meaning of the word *drilling* was discussed by some of the witnesses. While respondent was on the witness stand, his counsel asked him, referring to the time the agreement of

March 20th was signed by the parties, and particularly to the addition thereto of the words "of drilling," the following question: "Was there any conversation at the time those words were inserted as to what they meant?" To this question, appellant's counsel interposed an objection, which the court sustained. Respondent's counsel had previously asked the witness certain questions concerning what happened at the time of the signing of this contract, and after the court had ruled in appellant's favor in sustaining appellant's objection to the question above quoted, respondent's counsel made the following offer of proof:

"I offer to show by Mr. Ethredge and by myself, if necessary and the court should permit me to testify, that at the time this contract was brought to my office by Mr. Fleming, that the objection was raised that it didn't specifically state what the five consecutive days of work should be, and that I (either I or Mr. Ethredge; possibly both of us) stated to Mr. Fleming that he might go ahead on this job and spend a good many days in cleaning dirt out of the hole or in fishing for lost tools or things of that kind and that was no fault of ours, but that if he drilled for five consecutive days on the bottom of the hole and then didn't make sufficient to double the amount of his labor expense that would be sufficient reason for a discontinuing the contract, and Mr. Fleming said at that time, 'Well, that is exactly what we mean, that we shall drill on the bottom of the hole for five consecutive days,' and we said, 'Well, then let's put it in there,' and we inserted in the two copies of the contract those two words 'of· drilling.'"

Upon appellant's objection, the court rejected the offered testimony. Later, on cross-examination of appellant's secretary, who signed the agreement of March 20th on appellant's behalf, respondent's counsel was permitted to ask certain questions as to what had been said and done at the time the agreement was signed, respondent contending that the court should

have received the evidence offered by respondent as bearing upon the construction to be placed upon the contract. Respondent's offer of proof was again rejected upon appellant's objection. After the close of the case, the matter was again discussed, the court adhering to its ruling previously made.

Later, the court filed a memorandum, which is included in the statement of facts, the court expressing the view that respondent was entitled to judgment, evidently being of the opinion that the contract was not ambiguous, but clearly stated the agreement of the parties. Findings of fact and conclusions of law were subsequently entered in accordance with the court's view of the matter.

The case has been twice argued to this court; once before a department, and once before the court sitting *En Banc*. The judges of this court disagree as to the interpretation to be placed upon the contract of March 20th, with particular reference to the words "five consecutive days of drilling." It is the opinion of the majority that the contract is ambiguous, and that the trial court should have admitted the evidence offered by respondent as to what was said by the interested parties at the time of the signing of this agreement. If the language of the contract is not plain, statements by the parties who signed the same, or their agents, subject to the rules of evidence, should be admitted to throw light upon the actual meaning of the contract.

The judgment appealed from is accordingly vacated, and the cause remanded, with instructions to the trial court to hear such competent, relevant, and material evidence as may be offered by either party as to what was said and done at the time the agreement of March 20th was executed by the parties. The su-

perior court will then again render judgment determining the issues presented.

As the evidence which we hold should have been received was rejected on appellant's objection, no costs in this court will be taxed.

STEINERT, C. J., MAIN, HOLCOMB, BLAKE, GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.

MILLARD, J. (dissenting)—On the facts recited in the majority opinion, the judgment should be reversed and the action dismissed.

Clearly, the trial court did not err in rejecting respondent's offer of proof; however, any question as to the correctness of that ruling is not before us. There is no cross-appeal in the case at bar, hence we may review only the questions—no constitutional or jurisdictional question is presented—properly raised by appellant. This is not out of harmony with the statutes (Rem. Rev. Stat., §§ 1736 and 1737 [P. C. §§ 7321, 7322]) respecting trial *de novo* in, and the power and duty of, this court, nor is the position I take in conflict with other statutes and supreme court rules. Respondent did not cross-appeal. It follows that he may not urge the consideration of testimony tendered by him, but excluded.