[No. 29802. *En Banc.* October 24, 1946.]

NINA E. DILL, *Appellant,* v. MARY ZIELKE *et al., Respondents.*[1]

[1]Reported in 173 P. (2d) 977.

*G. E. Lovell,* for appellant.

*Cornelius E. Collier, Ralph P. Edgerton,* and *H. E. T. Herman,* for respondent Mary Zielke.

STEINERT, J.—Plaintiff, Nina E. Dill, brought suit to recover possession of certain real property which had formerly been sold by her under a forfeitable conditional sales contract. Mary Zielke, who was a subsequent contract purchaser of the same property from plaintiff's vendee, was made the principal defendant in the case. Defendant Zielke appeared in the action by answer and cross-complaint which put in issue the material allegations of plaintiff's pleading with reference to forfeiture and further sought, by the cross-action, to have the defendant declared to be the owner, and entitled to the possession, of the real property in question. Upon joinder of issues, the cause was tried to the court without a jury. At the conclusion of the trial, the court took the cause under advisement and later rendered a memorandum opinion concluding with a decision in favor of the litigant defendant. Findings, conclusions, and a decree were entered accordingly, and plaintiff appealed.

On August 22, 1941, appellant, Nina E. Dill, entered into a written contract with Roy M. Mulberry and Marian Mulberry, husband and wife, wherein Mrs. Dill agreed to sell and the Mulberrys agreed to purchase a certain lot, with the appurtenances, situated in the city of Spokane.

The contract recited that the purchase price of the property was sixteen hundred dollars, of which the sum of five hundred dollars was acknowledged as having been paid at

the time, and that the balance of fifteen hundred dollars was to be paid in monthly installments of not less than eighteen dollars, inclusive of interest at the rate of six per cent per annum, the first installment to be paid on October 22, 1941, and the purchasers to have the right at any time to pay as much of the balance of the purchase price as they might desire, without payment of unearned interest or penalty.

The agreement also contained time and forfeiture provisions reading as follows:

"Time is of the essence of this contract.  In case the purchasers shall fail to make any payment at the time the same shall fall due as hereinbefore specified, or to perform any covenant or agreement before said date, seller at her option may declare such a forfeiture and cancellation by written notice to the purchasers and at the expiration of thirty (30) days this agreement shall be at an end and null and void, if in the meantime the terms of this agreement have not been complied with by the purchasers."

Pursuant to the terms of the contract, a copy of that instrument and a warranty deed from the seller to the purchasers were placed in escrow, under a written agreement authorizing the First National Bank of Spokane, as escrow agent, to receive the monthly installments, issue receipts therefor, and, upon final payment, to deliver the escrow papers to the purchasers.  The escrow agreement further provided that, if the purchasers failed to make promptly any of the payments when due, as required by the contract of sale, the escrow holder should return the deed and contract to the appellant seller after thirty days' notice in writing by registered mail to the last-known address of the purchasers.  A policy of title insurance was also, at or about the same time, deposited with the escrow agent.

The purchasers, Mr. and Mrs. Mulberry, went into possession of the real property and made payments to the bank on their contract from the date of its execution until August 3, 1944, in amounts totaling $712, of which the sum of $232.86 represented accrued interest.  On the date last mentioned, they made the payment which had come due on

July 22nd, at which time a balance of $1,120.86 was still owing, but not yet due, on the contract. In making their monthly payments the purchasers were usually late, the overtime ranging from periods of two days to three weeks.

The installment of $18, inclusive of $5.61 interest, coming due on August 22, 1944, was, for reasons which will subsequently appear, never paid by the purchasers. Up to that time, the respondent Mary Zielke was in no way involved in the conditional sales contract or concerned with the property therein described.

Sometime in August, 1944, the Mulberrys concluded to sell the property and, for that purpose, listed it with one C. A. Hines, a realtor in Spokane. Mr. Hines succeeded in interesting respondent Mary Zielke, a widow, in the purchase of the property, and on September 1, 1944, Mrs. Zielke and the above-mentioned Roy Mulberry entered into a written agreement wherein Mrs. Zielke obligated herself to purchase, and Mr. Mulberry obligated himself to sell, the real property here involved at a price of twenty-five hundred dollars, of which the sum of five hundred dollars was then and there paid in cash, and the balance of two thousand dollars was to be paid on the consummation of the transaction. That agreement made no mention of the Dill contract or of Mrs. Dill's interest in the property, although it obligated Roy Mulberry, as the immediate seller, to furnish an acceptable policy of title insurance and to execute a good and sufficient deed to Mrs. Zielke, as purchaser.

On or about the same day that this agreement was executed, Mr. Hines notified the bank, as escrow holder, that the property was being sold and at the same time procured from the bank the title insurance policy then in its possession, for the purpose of having it brought down to date. A few days thereafter, Mrs. Zielke paid to Hines a sum sufficient to satisfy the balance owing, and to be owed, to Mrs. Dill, amounting approximately to $1,142, inclusive of accruing interest, and, on September 17, 1944, Mrs. Zielke, with her daughter, went into possession of the property.

Due to the delay encountered in having the policy of title insurance brought down to date and to the further fact that

Mrs. Zielke was procuring, through another real estate transaction then in process of completion, the funds with which to pay to the Mulberrys the balance of the amount coming to them, Mr. Hines retained the funds already in his possession until both transactions could be concluded.

In the meantime, Mrs. Dill, the appellant herein, learned of the negotiations between the Mulberrys and Mrs. Zielke, and apparently did not approve of them. On several occasions during the period between September 17 and October 15, 1944, she visited the premises then being occupied by Mrs. Zielke and her daughter and stated to them that they were "trespassers." Learning also that the policy of title insurance had been temporarily relinquished by the bank to Mr. Hines for the purpose of having it brought down to date, Mrs. Dill voiced her positive objection to that procedure.

During this time, the situation with respect to the transaction between the Mulberrys and Mrs. Zielke had progressed to the point where it was about to be fully consummated. On October 16, 1944, Mr. Hines wrote a letter to Mrs. Dill, advising her that the property had been sold to Mrs. Zielke, and that in a few days he would have the money to pay her, Mrs. Dill, the full amount owing on her contract of sale. The evidence reveals that at that time Mr. Hines actually had in his possession sufficient moneys to pay the full amount of that balance, but was waiting for the additional amount necessary to satisfy the balance owing to the Mulberrys on their contract with Mrs. Zielke. That amount was virtually assured, however, through the kindred transaction then pending between Mrs. Zielke and other persons.

The letter from Mr. Hines to Mrs. Dill precipitated the subsequent action taken by Mrs. Dill, leading to this litigation. On October 17, 1944, the day on which Mrs. Dill received Mr. Hines' communication, she wrote and sent, by registered mail, to Mr. Mulberry, a letter advising him that she was canceling his contract of purchase because of his failure to make the monthly payments according to the terms of the contract, and notifying him that she was then

giving him "the required thirty day notice" at the expiration of which she would demand possession of the premises. A copy of this notice was also mailed to the bank, but none was sent to Mrs. Zielke, and, so far as the record herein discloses, Mrs. Zielke never knew of the intended forfeiture until about the time this action was commenced. As stated by the trial court in its memorandum opinion, "Unquestionably, this letter of Mr. Hines is what inspired the notice of forfeiture."

At the time the notice of forfeiture was given, the Mulberrys were in arrears on their August 22nd and September 22nd installments, amounting in all to thirty-six dollars. The time fixed in the notice of forfeiture expired on November 17, 1944.

The delinquent installments were not paid within the specified time, as concededly they should have been. However, on November 20th, which was but three days after the expiration date, Mr. Hines paid to the bank, the escrow holder, the sum of $1,142.91, which was the full amount owing to Mrs. Dill on her conditional sales contract with the Mulberrys. Mr. Hines also at that time demanded from the bank the surrender of the escrow papers, including the warranty deed from Mrs. Dill to the Mulberrys. The bank refused, however, to surrender the papers, for the reason that, a few hours before the payment of the $1,142.91, Mrs. Dill had notified the bank that all of the escrow papers were to be returned to her. In consequence of the situation thus confronting it, the bank refused to deliver the papers to either party until it had received legal advice as to what it should do. It still has possession of the papers and of the final payment of $1,142.91.

As a result of the creation and continuance of this impasse, appellant instituted the present action against Mrs. Zielke and the bank, and in her amended complaint, filed April 24, 1945, prayed for a writ of restitution to put appellant in possession of the property, for an order directing the bank to deliver to her the escrow papers, and for such other relief as to the court should seem proper. Respondent asked for contrary relief, in her favor, against appellant

and the bank. In its memorandum opinion, the trial court expressed two reasons for refusing to give effect to the notice of forfeiture as requested by appellant: (1) the fact that no notice of forfeiture was served upon Mrs. Zielke, who to the knowledge of the appellant was in possession of the property at the time, and (2) because forfeiture, under the existing circumstances, would be abhorrent to a court of equity. We prefer to rest our decision upon the second ground suggested by the trial court.

We are cognizant of the well-established rule in this state that, where time is made of the essence of a contract of sale, the vendor may declare a forfeiture of the contract for the nonpayment of the purchase price or any installment thereof. *Douglas v. Hanbury,* 56 Wash. 63, 104 Pac. 1110, 134 Am. St. 1096; *Reard v. Ephrata Orchard Homes Co.,* 78 Wash. 180, 138 Pac. 678; *Huston v. Dodge,* 140 Wash. 66, 248 Pac. 63; *Cowley v. Foster,* 143 Wash. 302, 255 Pac. 129; *Barrett v. Bartlett,* 189 Wash. 482, 65 P. (2d) 1279.

It is equally well established, however, that forfeitures are not favored in law and are never enforced in equity unless the right thereto is so clear as to permit of no denial. *Walker v. McMurchie,* 61 Wash. 489, 112 Pac. 500; *Harlan v. McGraw,* 107 Wash. 286, 181 Pac. 882; *Wallis v. Elliott,* 154 Wash. 625, 282 Pac. 928; *Grosgebauer v. Schneider,* 177 Wash. 282, 31 P. (2d) 901; *Mayflower Realty Co. v. Security Sav. & Loan Society,* 192 Wash. 129, 72 P. (2d) 1038, 75 P. (2d) 579.

Recognizing the hardship that often attends a strict enforcement of a forfeiture provision, and confronted with a situation where such enforcement would do violence to the principle of substantial justice between the parties concerned, under the particular facts of a case, the courts of this state have frequently relieved a party from default of payment on an executory contract involving real estate by extending to such person a "period of grace" within which to make such payments. *Rohlinger v. Coletta Land & Orchard Co.,* 64 Wash. 348, 116 Pac. 1095; *Zane v. Hinds,* 136 Wash. 352, 240 Pac. 6; *Wallis v. Elliott, supra; Great Western Inv. Co. v. Anderson,* 162 Wash. 58, 297 Pac. 1087; *Grosge-*

*bauer v. Schneider, supra; Central Life Assurance Soc. v. Impelmans,* 13 Wn. (2d) 632, 126 P. (2d) 757.

In our opinion, the facts in this case call for the application of this principle and the extension of such relief. It will be remembered that the full amount of the balance owing to appellant was paid to her escrow agent three days after the expiration of the time designated in the notice of forfeiture. If appellant had commenced her action *before* such payment, instead of afterwards, the trial court would have been fully warranted, under the existing circumstances, in granting to the Mulberrys an extension of three days, and even more, in which to pay the amount owing by them. The action having been commenced *after* that amount had been paid by Mrs. Zielke, a bona fide purchaser of the property from the Mulberrys, without knowledge of the forfeiture, much greater reason exists for refusing to permit strict enforcement of such forfeiture.

The equities of the case are prominent. Payments under appellant's contract had been made by the Mulberrys over a period of three years and a substantial amount had been realized thereon by the appellant. The amount of delinquency at the time the notice of forfeiture was given was but thirty-six dollars. Although those payments should have been made, the reason they were not made promptly was that an assured sale to Mrs. Zielke was in progress, and it was a matter of only a short time when the transaction would be completed. Appellant has not lost one cent upon her contract but is in a position to receive every dollar to which she is entitled under her agreement. On the other hand, should she now be allowed to prevail, she will have been permitted to retain all that was paid to her during the three years and, in addition, recover the real property, which, in the meantime, has become enhanced in value to the extent of nine hundred dollars. An equivalent loss would correspondingly fall either upon the Mulberrys or Mrs. Zielke, or both. It appears to us that, in bringing this action, appellant was inspired more by the desire to secure for herself the profit that the Mulberrys now stand to make, than by an intention to enforce performance of the principal

terms of her contract with the Mulberrys. But whatever may have been her object, we do not believe that, under the facts presented, she is entitled to prevail by strict enforcement of the forfeiture provision.

The decree is affirmed.

ROBINSON, JEFFERS, and CONNELLY, JJ., concur.
MALLERY, J., dissents.

MILLARD, C. J. (concurring in the result)—The motion of respondent Zielke that the judgment be affirmed for the reason that appellant has made no assignment of error should be granted. Rule 16, subds. 2 (d) and 5, Rules of the Supreme Court, 18 Wn. (2d) 17-a, provides that in the brief of appellant *shall* be printed assignments of error in type distinctively displayed and "each error relied on shall be clearly pointed out and discussed under appropriate designated headings."

Rule 21, Rules of the Supreme Court, 18 Wn. (2d) 21-a, provides:

"No alleged error of the superior court will be considered by this court unless the same be clearly pointed out in the appellant's brief: . . ."

There is no assignment of error in appellant's opening brief; therefore, if our rules mean what they say, appellant is not entitled to have the contentions on her appeal considered. *Hafer v. Marsh,* 16 Wn. (2d) 175, 181, 132 P. (2d) 1024.

Appellant's supplemental brief (filed twenty-nine days subsequent to date of filing of respondent's brief, in which is motion to affirm the judgment because of absence of any assignment of error in appellant's opening brief) assigns as the only error entry of the final judgment for the reason that it is not consistent with the facts in the case. That comes too late. Also, the assignment is too general to challenge the accuracy of the findings of fact, which we should therefore accept as the established facts in this case. Those findings sustain the judgment. See *Sansen v. Lindell,* 14 Wn. (2d) 643, 129 P. (2d) 234; *Brydges v. Millionair Club,* 15 Wn. (2d) 714, 132 P. (2d) 188.

The rules which require appellant to assign in his brief the errors upon which he relies for reversal are important and should be followed. See *Wood v. Washington Nav. Co.*, 1 Wn. (2d) 324, 95 P. (2d) 1019, in which is stated the purpose of a rule of this court which requires statement in an appellant's brief of the questions involved.

While we have the power to change the rules of this court, we should not except a particular individual from their operation or excuse the violation in a particular instance. *State v. Currie*, 200 Wash. 699, 94 P. (2d) 754. In other words, we should not breach our rules "in the middle of the game." As observed by Mr. Justice Roberts in *Smith v. Allwright*, 321 U. S. 649, 64 S. Ct. 757, 151 A. L. R. 1110:

"The instant decision . . . tends [like others in which opinions will soon be published] to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and train only. I have no assurance, in view of current decisions, that the opinion announced today may not shortly be repudiated and overruled by justices who deem they have new light on the subject . . . It is regrettable that in an era marked by doubt and confusion, an era whose greatest need is steadfastness of thought and purpose, this court . . . should now itself become the breeder of fresh doubt and confusion in the public mind as to the stability of our institutions."

The following language in the dissenting opinion of Mr. Justice Roberts in *Mahnich v. Southern S. S. Co.*, 321 U. S. 96, 64 S. Ct. 455 is also apt:

"Respect for tribunals must fall when the bar and the public come to understand that nothing that has been said in prior adjudication has force in a current controversy."

Judge Robinson, speaking for this court in *State v. Currie*, 200 Wash. 699, 94 P. (2d) 754, said:

"It is true that the court has the power to change and rewrite the rule, but that is a very different thing from excepting a particular individual from its operation or excusing its violation in a particular instance."

In that case, a defendant, convicted of being an habitual criminal and sentenced to confinement in the state penitentiary for life, attempted to personally conduct his appeal.

We dismissed his appeal because he failed, in his ignorance of rules of procedure, to timely perfect his appeal. We said that "in attempting to conduct his own appeal, the appellant assumed an undertaking which was far beyond his capacity and understanding."

We refused to relax the rule requiring speedy determination of criminal appeals and denied to a man who had been sentenced to life imprisonment a review in this court simply because, in his ignorance, he had not complied with certain technical rules.

Bad laws and rules can be endured; but the uncertain law or rule—one that shifts and changes each time it is invoked in the courts, "is as sore an evil and as heavy a curse as any people can suffer." *Hole v. Rittenhouse*, 2 Phila. 411, 417.

In *In re Levy*, 23 Wn. (2d) 607, 161 P. (2d) 651, we stated that this court had inherent power to admit the petitioner to practice at the bar of this state, but, since the petitioner did not have the qualifications required by a certain rule,

" . . . the court cannot exercise that power, while the rule remains in existence, without violating principles of civilized jurisprudence, so elementary as not to require discussion."

In *State v. Currie, supra,* we refused to except that defendant from operation of rules of procedure and sent him to the penitentiary for life. We stated that, although appellant, who personally conducted his own appeal, had not the capacity and understanding to prosecute his appeal from judgment of conviction, we had no power to excuse violation of the procedural rule in a particular instance. That man went to the penitentiary for life without a review of the judgment because *we had not* the *power to change* and rewrite the *rule in* the *middle of the game.*

In *State v. Stevick,* 23 Wn. (2d) 420, 161 P. (2d) 181, we refused to consider a contention that the trial court erred in not giving several proposed instructions, for the reason that no error was assigned in appellant's brief (the same situation in the case at bar) concerning the matter.

In *In re Ludwick,* 23 Wn. (2d) 115, 160 P. (2d) 504, we held that, as an appeal from an order denying a petition of

a criminal inmate of the state penitentiary for a writ of *habeas corpus* is *"an appeal in a civil action or proceeding,"* such appeal will be dismissed where the appellant failed to file, within time prescribed by rule of this court, an appeal bond. *That was a criminal cause. State v. Nelson,* 6 Wn. (2d) 190, 107 P. (2d) 1113. (Italics mine.)

See, also, *State v. Wise,* 23 Wn. (2d) 775, 162 P. (2d) 295.

In *State v. Conners,* 12 Wn. (2d) 128, 120 P. (2d) 1002, defendant appealed from conviction of crime of grand larceny. Every step in perfecting the appeal was timely and in strict conformance to the rules of this court except payment of required appearance fee of five dollars. Under the rules, the fee should have been paid on or before the sixtieth day after giving notice of appeal. As the clerk of this court did not receive the filing fee until the sixty-second day after notice of appeal was given, we *respected* the rule and dismissed the appeal. That was a *criminal* cause.

The excuse that in certain cases we denied review to the appellant because the rule breached was *jurisdictional* is a lame one. True, in criminal cases, we rigorously enforce the rules, but an examination of our opinions in criminal causes will disclose that we, as one former member of this court observed, refuse to get "worked up" over even the constitutional rights of persons convicted of crime. In other words, constitutional safeguards, which are not invoked until they are needed, mean nothing if you are convicted, it being conclusively presumed that the defendant had a fair trial and was guilty because of the verdict.

In *State v. Redwine,* 23 Wn. (2d) 467, 161 P. (2d) 205, we held that while in a criminal case on appeal it is presumed that error in admission of evidence is prejudicial, we will consider the full record and determine, thus sitting as triers of fact, whether the presumption has been overcome. This contravenes the constitutional provisions guaranteeing a fair trial, which means a legal trial. This presupposes that incompetent evidence will not be admitted. One could as validly be tried, over his protest, without a jury or with less than the legally required number of qualified jurors, as he

could be fairly tried by the admission of evidence which is inadmissible.

No matter how guilty we may believe a defendant to be, no matter how guilty he may be, he is entitled to a fair trial and should not be denied any right guaranteed to him by the constitution. Courts are prone to deprive the accused of constitutional safeguards in the desire to administer criminal justice. By the deprivation of an accused of constitutional safeguards, the accused is denied a fair trial, and the verdict of the jury and the judgment of the court entered thereon are as invalid as if the accused had been tried by a mob. The only excuse that may be offered by the court is the same as that advanced by the mob—"the accused, we are convinced, is guilty."

See *Seattle v. Reed*, 6 Wn. (2d) 186, 107 P. (2d) 239, another criminal case where we enforced the rule respecting time limit for filing record on appeal. In *State v. Nelson*, 6 Wn. (2d) 190, 107 P. (2d) 1113, we dismissed appeal for the reason that appellant was eight days late in payment of filing fee in this court.

In *State v. Hampson*, 9 Wn. (2d) 278, 114 P. (2d) 992, defendant was found guilty of the crime of murder in the first degree and sentenced to penitentiary for life. This court extended time to November 1st in which to file abstract of record in this court. Appellant did not file the abstract of record until November 14th, thirteen days late. On the ground that the abstract of record was not filed within the time provided in the rule of this court, we dismissed the appeal.

In *State v. Domanski*, 9 Wn. (2d) 519, 115 P. (2d) 729, defendant was convicted of being an habitual criminal and sentenced to life imprisonment. We held in that case that, under rule of this court, error in instructions not set out in opening brief could not be considered on appeal; and a document filed on the day of the argument [that was *substantial compliance* with the rule] setting out the challenged instructions does not comply with the rule.

In *State v. Conners*, 12 Wn. (2d) 128, 120 P. (2d) 1002, we dismissed appeal from conviction of grand larceny. We

dismissed the appeal for the reason that the filing fee of five dollars was not received by the clerk of this court until two days after expiration of sixty-day period in which to complete record on appeal. In that case, the record was received by the clerk of this court on the fifty-ninth day or one day prior to expiration of the sixty-day period. See, also, *State v. Currie,* 200 Wash. 699, 94 P. (2d) 754; *State v. Nelson,* 6 Wn. (2d) 190, 107 P. (2d) 1113; *State v. Hampson,* 9 Wn. (2d) 278, 114 P. (2d) 992.

In *State v. McCollum,* 17 Wn. (2d) 85, 136 P. (2d) 165, 141 P. (2d) 613, we held, in effect, that the constitutional provision (Art I, § 7, Washington constitution) that no person shall be disturbed in his private affairs, "or his home invaded, without authority of law," was a dead letter and approved search, without warrant therefor, of home of accused the day following his arrest while in a hospital.

In *State v. Bell,* 20 Wn. (2d) 64, 145 P. (2d) 903, defendant appealed from conviction of crime of grand larceny. We dismissed his appeal for the reason that he was three days late in filing his proposed statement of facts in the superior court.

In *State v. Sylvia,* 195 Wash. 16, 79 P. (2d) 639, we held that failure to file a statement of facts in a criminal case within the period fixed by rule is jurisdictional, even if the belated filing is due to the fault of his counsel.

See, also, *State v. Harder,* 130 Wash. 367, 227 Pac. 501, where appeal was from conviction of crime of murder in second degree, and *State v. Schafer,* 154 Wash. 322, 282 Pac. 55, where jury found defendant guilty of murder in the first degree and "that the death penalty should be inflicted." In each of these cases we refused to relax the rule requiring filing of bill of exceptions or statement of facts within ninety-day period.

In *State v. Jensen,* 194 Wash. 515, 78 P. (2d) 600, on appeal of defendant from conviction of murder in the second degree, we refused, under rule—not jurisdictional—of this court to consider instructions that were not set out in full in appellant's opening brief. See, to the same effect, *State v. Elwood,* 193 Wash. 514, 76 P. (2d) 986, where defendant

was sentenced as an habitual criminal to penitentiary for life. See, also, *Walker v. Copeland*, 193 Wash. 1, 74 P. (2d) 469, and *State v. Low*, 192 Wash. 631, 74 P. (2d) 458.

In *State v. Knizek*, 192 Wash. 34, 72 P. (2d) 310, we held that an order vacating a forfeiture of bail is an order in a "criminal case."

In *State ex rel. Linden v. Bunge* (a criminal case), 192 Wash. 245, 73 P. (2d) 516, we held, citing as sustaining authority *Blouen v. Quimpere Canning Co.*, 139 Wash. 436, 247 Pac. 940, and *Goebel v. Elliott*, 178 Wash. 444, 35 P. (2d) 44, that *although argued in the brief*, we will not consider errors that are not formally assigned in the brief as required by rule of this court.

In *State v. Marcy*, 189 Wash. 493, 65 P. (2d) 1271, we dismissed appeal of defendant from conviction of crime of grand larceny for the reason that he failed to file, as required by supreme court rule, a statement of facts in this court within sixty days.

In *State v. Sherwood*, 166 Wash. 160, 6 P. (2d) 595, *State v. Schafer*, 154 Wash. 322, 282 Pac. 55 (a capital case), and *Tremblay v. Nichols*, 187 Wash. 109, 59 P. (2d) 1123, we held that failure to file statement of facts within time required by rule of this court is fatal to the appeal, as the filing of the statement of facts within time is jurisdictional. See, also, *Laux v. Stitt*, 186 Wash. 180, 57 P. (2d) 321, and *Strmich v. Department of Labor & Industries*, 186 Wash. 649, 59 P. (2d) 372, which cited as sustaining authority *Simmons v. Department of Labor & Industries*, 175 Wash. 290, 27 P. (2d) 567.

*Bobst v. Hardisty*, 199 Wash. 304, 91 P. (2d) 567, is another case of "a little rift within the lute." In breaching the rule, we said:

"Appellant's opening brief does not set out a formal assignment of error, captioned as such. He begins his argument, however, by stating that his contention is that the court erred in failing to grant his motion for judgment notwithstanding the verdict. While informal, we are disposed to treat this statement as in substantial compliance with the rule."

In *Klein v. Zeeve,* 199 Wash. 644, 92 P. (2d) 877, we were not so liberal; we said:

"It may be that the court erred in allowing interest beyond the last-preceding interest date, but in our opinion the assignments of error are not sufficient to present that question, and we will not consider it upon the mere suggestion by way of argument in the brief."

In *State v. Hall,* 185 Wash. 685, 56 P. (2d) 715, defendant appealed from conviction of murder and death sentence. In appellant's brief in that case, a statement as clear as the one in *Bobst v. Hardisty, supra,* we held was not a substantial compliance with the rule that errors assigned but not argued nor referred to in the brief will not be considered.

In *State v. Parkinson,* 181 Wash. 69, 41 P. (2d) 1095, defendant appealed from conviction of crime of grand larceny but was late nineteen days in filing the statement of facts. We held that the filing of a statement of facts, "even in criminal cases," is jurisdictional, and if not filed within the time prescribed by rule of this court it will not be considered upon appeal.

We should never forget *State v. Schafer,* 154 Wash. 322, 282 Pac. 55. We denied to defendant, who was hanged, a review because he was tardy in matter of filing statement of facts. See, also, *State v. Thompson,* 154 Wash. 663, 283 Pac. 182.

In *State v. White,* 40 Wash. 428, 82 Pac. 743, defendant appealed from conviction of crime of murder in the first degree. The last day he could, under the rule, file the statement of facts, defendant made application for extension of time for a period of thirty days in which to obtain a transcript of the record on appeal. By affidavit, it was disclosed that appellant had been unable to secure a transcript by reason of his poverty; but, if an extension of thirty days were granted, he would be able to procure the necessary funds to perfect his appeal. We dismissed the appeal despite the constitutional right to appeal from the judgment, and held that such right could be forfeited by reason of appellant's poverty. We said:

"The appellant earnestly insists that he has a constitutional right to appeal from the judgment against him, and that such right cannot be impaired or forfeited by reason of his poverty. The right of appeal in such cases is no doubt guaranteed by the constitution, but the procedure on appeal is entirely statutory, and this court is powerless to grant relief against a failure to comply with the mandatory requirements of the statutes governing appeals. Two of these mandatory requirements are, that an appeal from a final judgment must be taken within ninety days from the date of rendition, and that the time for filing and serving a proposed statement of facts or bill of exceptions cannot be extended beyond ninety days from the entry of the judgment or order appealed from. *State v. Seaton,* 26 Wash. 305, 66 Pac. 397, and cases cited.

"The application presented to the court below was styled, 'An application to extend the time in which to take an appeal.' Such relief the court was powerless to grant. If it were intended as an application for an extension of the time for filing and serving a bill of exceptions or statement of facts, the court was equally powerless, as the application was not made until the ninetieth day after the rendition of the final judgment. It would have been futile for the court below to require the state to furnish a proposed statement of facts to be filed more than ninety days after the entry of the judgment appealed from, and it would be equally futile for this court to make such an order now. We are not called upon to decide whether a court should compel the state to furnish a statement of facts on appeal, in any case or under any circumstances."

See, also, to the same effect, *State v. Harder,* 130 Wash. 367, 227 Pac. 501, in which appeal from conviction of crime of murder in second degree was dismissed.

In *State v. Sheffield,* 24 Wn. (2d) 984, 166 P. (2d) 171, we "changed the rules in the middle of the game" forgetful of our solemn pronouncement often made that we would not relax our rules to excuse violation thereof in a particular instance.

Sheffield's appeal was dismissed January 7, 1944. Decision on appellant's petition for rehearing was withheld until we could so amend the rule—Rule XII amended February 18, 1944—that appellant's time for filing his record would be extended. We then held, March 28, 1944, that the

motion for rehearing could be considered under the amended rule, and granted motion to reinstate the appeal. I dissented as follows from that breach of our rules:

"I dissent against reinstatement of appeal which was dismissed January 7, 1944. Appellant was convicted of the crime of accepting the earnings of prostitutes.

"To hold that subsequent (February 18, 1944) amendment of Rule XII to allow ninety days to an appellant within which to file his opening brief and transcript of record excuses appellant's violation of a mandatory rule (Rule XII) which was in effect when his appeal was dismissed is not excepting a particular individual from operation of a mandatory rule, is illogical.

"Men on their way to the gallows (those cases are available in the Washington digest of reports) vainly pleaded to this court for relaxation of rules like above. We justified our position in denying their pleas by stating that we would not change a mandatory rule to except a particular individual from its operation. In *State v. Currie*, 200 Wash. 699, 94 P. (2d) 754, we dismissed the appeal of the defendant from conviction of being an habitual criminal. The appeal was dismissed for the reason that appellant's transcript of record was filed in this court more than two months too late, his statement of facts was twenty-eight days too late, and his opening brief more than forty days too late under the rules. The appellant personally conducted his appeal, which we stated was far beyond his capacity and understanding. Despite the fact that he was incapable of conducting his appeal, and that the dismissal of his appeal resulted in confinement for the remainder of his life within the penitentiary as an habitual criminal, we held that we would not relax the rules to excuse violation thereof in a particular instance. We said:

" 'Finally, although the matters with which we are dealing are embraced in what we call a rule, it is that kind of a rule which has all the force of a statute, since it was promulgated at the direct command of the legislature "to promote the speedy determination of litigation." It is true that the court has the power to change and rewrite the rule, but that is a very different thing from excepting a particular individual from its operation or excusing its violation in a particular instance. That, the court has no power to do.'

"In *State v. Hampson*, 9 Wn. (2d) 278, 114 P. (2d) 992, the appeal of the defendant from conviction of murder in

the first degree was dismissed under the provisions of Rule XII for the reason that the abstract of record was not filed with the clerk of this court until thirteen days after the time within which the rule provided for such filing. We reviewed our prior cases and held that the rule was mandatory and that we would not except a particular individual from its operation or excuse its violation in a particular instance. We said:

" 'Dismissal of an appeal seems a harsh penalty for failure to file an abstract of record within the required time. However, if it is too drastic and is not justified by the end sought to be accomplished, namely, the expediting of final determination in criminal appeals, then the remedy lies in appropriate amendment of the rule. As now constituted, it is mandatory in its terms, *does not reserve to this court the power to exercise discretion in particular cases*, and we have no alternative but to enforce its provisions.'

"Under the provisions of Rule XII, in *State v. Conners*, 12 Wn. (2d) 128, 120 P. (2d) 1002, we dismissed an appeal from conviction of grand larceny. In that case, although the record and briefs in the cause were received by the clerk of this court within the sixty-day period prescribed by Rule XII, we dismissed the appeal because the required appearance fee of five dollars was not paid until two days after the period in which such fee should have been paid.

"If we did not mean what we said in so many of our cases respecting the enforcement of mandatory rules we should overrule those opinions and inform the Bar that when so disposed we will rewrite the rule in order to permit an appellant to perfect his appeal and authorize a hearing of the appeal on its merits. We should also amend our rules to permit those now in the penitentiary, whose appeals were dismissed by this court because of violation of some of our rules, to again appear in this court and have their appeals heard on the merits. Nothing can be done, however, for others who went to the gallows pleading that their appeals be heard on the merits."

In 1929, we reinstated, without an opinion, appeal in the case of *State v. Awde*, No. 21692. In that case, the statement of facts was not filed within time.

In *Reynolds v. Reynolds*, 42 Wash. 107, 84 Pac. 579, we refused to dismiss an appeal where appellant failed to file proof of service of notice of appeal within five days as required by statutory rule. We erroneously held that Laws of

1899, chapter 49, p. 79 (Rem. Rev. Stat., § 1734 [P.P.C. § 5-61]) materially changed the prior act and authorized disregard of the statutory (Rem. Rev. Stat., § 1719 [P.P.C. § 5-11]) rule. It is clear from a reading of chapter 49, Laws of 1899, and § 19, p. 129, chapter 61, Laws of 1893, which was amended by chapter 49, Laws of 1899, that the amendment did not relate to or concern Rem. Rev. Stat., § 1719. In 1945, thirty-nine years after publication of opinion in *Reynolds v. Reynolds, supra,* we acknowledged our error. See *In re Yand's Estate,* 23 Wn. (2d) 831, 162 P. (2d) 434.

In *Association Collectors, Inc., v. Hardman,* 2 Wn. (2d) 414, 98 P. (2d) 318, we held that an assignee could not maintain an action upon an account stated which could not be maintained by the assignor foreign corporation by reason of the latter's failure to comply with the laws of this state with respect to the privilege of foreign corporations to carry on business within this state. The author of the majority opinion in the case at bar and three other judges vigorously dissented in the case cited for the reason that the majority refused to overrule prior opinions of this court announcing and following a contrary rule which the dissenting judges thought "should be followed in this case."

In *Pattison v. Walker,* 2 Wn. (2d) 62, 97 P. (2d) 160, 100 P. (2d) 20, we said that parties to an appeal could not waive the rule requiring the serving and filing of the statement of facts within ninety days after the time begins to run within which an appeal may be taken from a final judgment in the case. We held that a second statement of facts filed after expiration of the ninety-day period could not be entertained, whether it be referred to as an amendment of the prior statement or as a supplemental statement; and illness of the court reporter is not an excuse for failure to file the second statement in time.

In the following cases, we held that a proposed statement of facts not filed within the period prescribed by the rule will not be considered: *Pattison v. Walker, supra; Tremblay v. Nichols,* 187 Wash. 109, 59 P. (2d) 1123; *State v. Sherwood,* 166 Wash. 160, 6 P. (2d) 595; *State v. Schafer,* 154 Wash. 322, 282 Pac. 55; *State ex rel. Hersner v. Arthur,*

7 Wash. 358, 35 Pac. 120; *Warburton v. Ralph,* 9 Wash. 537, 38 Pac. 140; *Bennett v. McKellips,* 8 Wn. (2d) 176, 111 P. (2d) 558; *Martell v. Raymond,* 11 Wn. (2d) 165, 118 P. (2d) 950.

We held, however, in *Livermore v. Northwest Airlines, Inc.,* 6 Wn. (2d) 1, 106 P. (2d) 578, that a proposed statement of facts may be supplemented after the ninety-day period provided for its filing, where the supplements are prepared and filed in an endeavor to meet the objections of the respondent and to comply with the instructions of the trial court.

Compare with the foregoing the following cases: *Hunter v. Department of Labor & Industries,* 190 Wash. 380, 68 P. (2d) 224; *Reid v. Department of Labor & Industries,* 194 Wash. 108, 77 P. (2d) 589; *In re Foy,* 10 Wn. (2d) 317, 116 P. (2d) 545; *Simmons v. Department of Labor & Industries,* 175 Wash. 290, 27 P. (2d) 567.

In *Simmons v. Cowlitz County,* 12 Wn. (2d) 84, 120 P. (2d) 479, we held that, on appeal from a judgment n.o.v., the respondent may not, in the absence of a cross-appeal, urge consideration of the question of its right to a new trial. See *Hanley v. Most,* 9 Wn. (2d) 429, 115 P. (2d) 933.

In *State v. Baird,* 200 Wash. 227, 93 P. (2d) 409, we held that, where evidence is excluded upon objection of appellant, we will not consider that evidence on appeal.

In *Shaw v. Briggle,* 193 Wash. 595, 76 P. (2d) 1011, we refused to consider error of which respondent complained for the reason that there was no cross-appeal.

Compare with the foregoing *Ethredge v. Diamond Drill Contracting Co.,* 196 Wash. 483, 83 P. (2d) 364. We there reversed the judgment on the ground that the trial court erred in rejecting respondent's offer of proof. There was no question before us as to the correctness of that ruling. The offer of proof was rejected by the trial court on appellant's objection thereto, and appellant did not complain in this court because of that ruling. There was no cross-appeal in the case, hence we were limited to review of only the questions—no constitutional or jurisdictional question was pre-

sented—properly raised by appellant. See, also, *Proff v. Maley,* 14 Wn. (2d) 287, 128 P. (2d) 330; *Seattle-First Nat. Bank v. Brott,* 15 Wn. (2d) 177, 130 P. (2d) 363.

In *LeCocq Motors, Inc., v. Watcom County,* 4 Wn. (2d) 601, 104 P. (2d) 475, the only assignments of error were that:

"(1) The court erred in its conclusions of law Nos. 3 and 4; (2) the court erred in entering judgment based upon conclusions of law Nos. 3 and 4."

Appellant's brief clearly disclosed the relief sought by appellant and that appellant was complaining because of certain findings of fact. Nevertheless, we held that, where no assignment of error is predicated upon the findings of fact, they must be accepted as the established facts in the case, and that an assignment of error as to a conclusion of law does not bring up for review the facts found upon which the conclusion is based.

In *Sears v. International Bro. of Teamsters,* 8 Wn. (2d) 447, 112 P. (2d) 850, we held that, where no assignment of error was made in the opening brief concerning the matter of taxation of witness fees, the claimed error will not be considered.

In *Kennedy v. Everett,* 2 Wn. (2d) 650, 99 P. (2d) 614, we held that the question of alleged excessive amount of judgment will not be considered on appeal where there is no statement of this question in appellant's brief *and* no error is assigned with reference to it.

In *State ex rel. Rand v. Seattle,* 13 Wn. (2d) 107, 124 P. (2d) 207, will be found some support for majority's disregard in the case at bar of the rule, which should either be repealed or followed. In the case cited, we said that omission from appellant's brief of a definite assignment of error "is a dangerous practice" and then held that the omission was not fatal. We considered the error claimed, for the reason, we stated (in justification of our disregard of the rule), that the contention that the court erred in a particular ruling so conclusively appeared from appellants' brief that a specific assignment of error could not have more definitely called the error of which appellants complained to the at-

tention of this court. We have deprived appellants of property, liberty, life, whose excuse, as valid as the foregoing, we refused to accept.

In *Hansen v. Lindell*, 14 Wn. (2d) 643, 129 P. (2d) 234, we held that, as a general rule, in the absence of an assignment of error directing its attention thereto, an appellate court will not review findings of fact. This rule not applicable, of course, to "a jurisdictional or other plain or fundamental error in the judgment or decree." We further held that, in the absence of a specific assignment of error, we will not go behind an implied finding of the trial court.

In *Hafer v. Marsh*, 16 Wn. (2d) 175, 132 P. (2d) 1024, indistinguishable from the case at bar on the question of application of Rule XVI, subds. 2 (d) and 5, of this court, we held that contentions on cross-appeal will not be considered in the absence of any assignment of error in the cross-appellant's brief.

In *Ernst v. Guarantee Millwork, Inc.*, 200 Wash. 195, 93 P. (2d) 404, we relaxed the rule and in a spirit of liberalism, little recking we were treating the rule as a dead letter, held that, where it is apparent from appellant's brief that the only error claimed, or which could be claimed, is that the order from which the appeal is prosecuted is not supported by the findings—in this we have not been consistent —the order will not be affirmed upon the record for failure of appellant to include in its brief any statement of the question involved or any assignment of error.

We held contrary to the foregoing in *Weisfield v. Seattle*, 180 Wash. 288, 40 P. (2d) 149, 96 A.L.R. 1190.

In *Hubbell v. Ernst*, 198 Wash. 176, 87 P. (2d) 985, we held that arguments in the brief cannot be considered where there is no assignment of error in accordance with rule of this court.

In *O'Leary v. Bennett*, 190 Wash. 115, 66 P. (2d) 875, citing as sustaining authority *Moore v. Spokane*, 88 Wash. 203, 152 Pac. 999, we again treated our rule as a dead letter and held that the absence from the brief of an assignment of error is not fatal if we can discover in the brief the error upon which appellant relies.

In *Moore v. Spokane, supra,* we denied motion to strike appellant's brief for failure to assign errors inasmuch as appellant had substantially complied with the rule, it appearing that, by our examination of appellant's brief, we were able to discover the errors upon which appellant relied for reversal. We said:

"Construing this statute and the rules referred to, it has been held that error not pointed out in the brief of the appellant with reasonable clearness will not be considered; but where the law has been substantially complied with, and we are able to discover from the brief the errors relied upon for a reversal, a motion to strike the brief and affirm the judgment will not be granted. *Crowley v. McDonough,* 30 Wash. 57, 70 Pac. 261; *Johnston v. Gerry,* 34 Wash. 524, 76 Pac. 258, 77 Pac. 503.

"In the present case, while the error relied upon by the appellant for a reversal of the judgment is not stated in its brief with commendable precision and definiteness, we are able to discover from the brief the claimed error of the trial court which is relied upon. This error is the act of the superior court in entering a judgment which annulled and set aside the assessment roll instead of confirming the same. No error in the admission of evidence, nor in any other matter which should be covered by a separate and distinct assignment of error, is complained of. To strike the appellant's brief and affirm the judgment because there is not a more literal compliance with the statute and the rules, would be a ruling too severely technical.

"In support of their motion to strike and affirm, the respondents cite *Haugh v. Tacoma,* 12 Wash. 386, 41 Pac. 173, 43 Pac. 37; *Perkins v. Mitchell, Lewis & Staver Co.,* 15 Wash. 470, 46 Pac. 1039, and *Doran v. Brown,* 16 Wash. 703, 48 Pac. 251. In those cases the briefs of the appellants were stricken and the judgment affirmed because in the briefs of the appellants there was not a substantial compliance with the statute and the rules, and the errors relied upon for reversal could not be determined from the briefs. We think the appellant's brief in this case comes within the rule first stated, and not within the rule of the cases cited by the respondent."

In *Goebel v. Elliott,* 178 Wash. 444, 35 P. (2d) 44, we held that we would not consider a question not raised by errors assigned or argued "in the printed briefs" and first presented in the oral argument.

In *Olympia Brewing Co. v. Northwest Brewing Co.*, 178 Wash. 533, 35 P. (2d) 104, we held that we would not consider appellant's contentions as to which there was no assignment of error in the brief.

In *Green v. Langnes*, 177 Wash. 536, 32 P. (2d) 565, we held that, under a rule of this court, a respondent may allege error without taking a cross-appeal, but he cannot assign error on the giving or refusal of instructions unless all of the instructions are before us. See *Ethredge v. Diamond Drill Contracting Co., supra.*

Errors not assigned in brief will not be considered on appeal. *Blumenthal v. Pacific Meat Co.*, 12 Wash. 331, 41 Pac. 47; *Haugh v. Tacoma*, 12 Wash. 386, 41 Pac. 173, 43 Pac. 37; *Perkins v. Mitchell, Etc., Co.*, 15 Wash. 470, 46 Pac. 1039; *Sengfelder v. Hill*, 21 Wash. 371, 58 Pac. 250; *Mohney v. Davis*, 104 Wash. 209, 176 Pac. 31; *Blouen v. Quimpere Canning Co.*, 139 Wash. 436, 247 Pac. 940.

In *Watson v. Grays Harbor Brick Co.*, 3 Wash. 283, 28 Pac. 527, we held that, under the provisions of the appeal act of March 22, 1890, it was sufficient, without making a formal assignment of errors, to specify the errors in appellant's motion for a new trial and cite them in its brief. See, also, *McReavy v. Eshelman*, 4 Wash. 757, 31 Pac. 35, where we said:

"Respondent moves to dismiss for want of an assignment of errors. Code Proc. § 1428, is the only place where an assignment of errors is mentioned in our statutes as they now exist. We think, inasmuch as the technical writ of error is now obsolete in our practice, so is the technical assignment of errors. All causes are removed to this court on appeal, and the section of the statute above cited merely recognizes the necessity of some orderly statement of grievances by the appealing party for the consideration of this court. It is a regulation of practice which the court has emphasized by rules 7 and 12. Opposite parties and the court look to the appellant's brief for alleged errors, and upon finding none assigned, the court would, of course, affirm the judgment, or dismiss. But in this case, while the brief is far from being a model in clearness and convenience of arrangement, we easily find the points of objection, and shall not grant the motion."

In *Ranahan v. Gibbons,* 23 Wash. 255, 62 Pac. 773, respondent's motion for dismissal of the appeal on the ground that appellant's brief contained no assignment of errors as provided by rules of this court, was denied. We said:

"The appellants, on page 19 of their brief, assign errors as follows:

" 'We contend: (1) That there was no agreement of any kind, or at all, concluded or entered into between Ranahan and Gibbons on the 6th of August, 1898, or at any time before the location of the First Thought; (2) that whatever talk was had between them was merely negotiary and amounted only to an offer or proposition, not a contract; (3) that the talk and proposition related only to the Shea claims, and contained nothing whatever as to Ranahan having an interest in the future locations of Gibbons and Walker; and (4) that the proofs do not warrant the facts found by the court.'

"It sufficiently appears from these assignments what the appellants rely upon for a reversal, and this case does not fall within the rule announced in *Perkins v. Mitchell, Lewis & Staver Co.,* 15 Wash. 470 (46 Pac. 1039)."

The foregoing did not *distinguish,* it *disregarded, Perkins v. Mitchell etc. Co.,* 15 Wash. 470, 46 Pac. 1039. See, also, *Phelps v. Tacoma,* 15 Wash. 367, 46 Pac. 400, and *Interstate Sav. & Loan Ass'n v. Benson,* 28 Wash. 578, 68 Pac. 1038.

In *Coles v. McNamara,* 136 Wash. 624, 241 Pac. 1, we enforced the rule which required appellant to clearly point out and separately discuss "each error relied on." We said:

"On this appeal appellant assigns as errors,

" (1) Errors of law occurring upon the trial;

" (2) The court erred in charging the jury and in refusing to charge as requested:

" (3) The verdict of the jury is contrary to the evidence and against law.

"These alleged errors are much too indefinite to comply with rule VIII of this court, which requires that 'each error relied on shall be clearly pointed out and separately discussed: *Provided,* that several assignments presenting the same general questions may be discussed together.' "

See, also, *Connecticut Inv. Co. v. Yokom,* 106 Wash. 693, 180 Pac. 926.

In *Chandler v. Cushing-Young Shingle Co.,* 13 Wash. 89, 42 Pac. 548, we denied motion to dismiss appeal for want of a specific assignment of errors in appellant's brief. We, as follows, lamely excused our disregard of the rule:

"The assignment of error in the brief of appellant consists of a statement of the following 'points:' (1) The receiver should account for the profits derived from his dealings with the trust estate; (2) he should account more clearly for moneys received by him as receiver; (3) no compensation should be allowed to the receiver for his services in view of his violation of the trust; (4) if any compensation is allowed it should be greatly reduced; (5) he should be required to make good to the creditors the loss resulting from his operation of defendant's mill; and (6) the items of disbursement objected to should be disallowed.

"The statute provides that the brief of appellant shall clearly point out each error that the appellant relies on for a reversal (Laws 1893, p. 127), and the respondent insists that this provision has not been complied with in this instance. In *Haugh v. Tacoma,* 12 Wash. 386 (41 Pac. 173), the appeal was dismissed because no errors had been assigned. In that case, however, the brief of appellant not only did not specify the errors relied on for a reversal, but failed even to refer to the pages of the record where the matters complained of could be found. But in this case the brief, in the course of the argument on the different points here made, refers to the objections in the record to the receiver's reports, and for that, and the further reason, that the objections now urged were passed upon by the court in making the orders appealed from, we have concluded not to dismiss the appeal on the ground now under consideration, although it must be conceded that the errors are not as clearly pointed out as they might have been.

"In this connection it may not be improper to observe that, in our opinion, it was the purpose of the legislature in enacting the law concerning the assignment of errors, to require the appellant to so specifically set forth each and every alleged error that an inspection of the brief alone will fully disclose the same. It was not the intention to require this court to search through the entire record in a case in order to determine what errors may have been committed, and if a proposed assignment is such as to require it to do so, it will be entirely disregarded. In other words, the assignment itself must, as the legislature has virtually declared,

clearly point out each error intended to be alleged, and this means, as was said by the supreme court of Tennessee, something more than a mere invitation to the court and adverse counsel to examine the entire record upon general and indefinite negations of the correctness of the decree or judgment. *Denton v. Woods,* 86 Tenn. 37 (5 S. W. 489)."

See, also, *McKenzie v. Royal Dairy,* 35 Wash. 390, 77 Pac. 680, and *James v. James,* 35 Wash. 650, 77 Pac. 1080, where we again refused to observe our rule.

*Collins v. Seattle,* 2 Wash. Terr. 354, and *Parker v. Dacres,* 2 Wash. Terr. 362, in which the then rule respecting filing and serving of assignment of errors was enforced, were disregarded in *Smith v. Wingard,* 3 Wash. Terr. 37.

In *Price v. Hornburg,* 101 Wash. 472, 172 Pac. 575, we held that, in the absence of an assignment of error in the brief, error cannot be based upon exceptions to the exclusion of evidence.

The rule requiring assignment of errors is simple, intelligible. There is no sound reason for the disregard by the majority of that rule. Contrast our excusing of the rule on the ground of "substantial compliance" (when, in fact, there has been no attempt, as in the case at bar, to comply even in part with the rule), and our sending a man to the gallows or to the penitentiary for life without reviewing judgment of conviction because of failure of accused to strictly comply with a similar rule, which we denominate "jurisdictional." We should not in one case follow a rule and in another like case in the same term of court deem it inexpedient to apply the same rule.

The judgment should be affirmed on the ground that there is no assignment of error in appellant's brief.

SIMPSON, J., concurs with MILLARD, C. J.